No. 47,490

Misco-United Supply, Inc., *Appellant*, v. Richards of Rockford, Inc., *Appellee*.

(528 P. 2d 1248)

Opinion filed December 7, 1974.

*Richard W. Stavely*, of Wichita, argued the cause and was on the brief for the appellant.

*Thomas P. Garretson*, of Martin, Pringle, Schell & Fair, of Wichita, argued the cause, and *J. Taylor Neuschwander*, of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

Owsley, J.: This is an appeal from an order of the district court sustaining defendant's motion to dismiss for lack of jurisdiction

over the person of defendant. The issues raised by this appeal require us to construe and apply for the first time subsection (*b*) (5) of K. S. A. 1973 Supp. 60-308, which provides for the exercise of *in personam* jurisdiction over any person who enters into a contract with a resident of this state "to be performed in whole or in part by either party in this state."

Plaintiff, Misco-United Supply, Inc., is a Kansas corporation having its principal place of business in Wichita, Kansas. Among other things, plaintiff deals in the sale of flexible liners for storage tanks. Plaintiff had made three prior sales to defendant, Richards of Rockford, Inc., an Illinois corporation, the first in November, 1971. In each transaction plaintiff's standard terms of sale provided that "Place of payment is Wichita, Kansas," and payment was sent by defendant to plaintiff's Wichita office. In the course of these transactions defendant's request for credit was approved by plaintiff and defendant was routinely invoiced on the basis of plaintiff's usual terms of sale.

On or about April 25, 1973, defendant telephoned plaintiff at its Wichita office and placed an order for five nylon reinforced hypalon tank liners. Plaintiff agreed to sell the liners to defendant and alleges it was agreed between the parties that payment was to be made at Wichita. Since Misco did not manufacture tank liners, it ordered the materials for the liners from a manufacturer in North Carolina; contracted with fabricators in Texas, North Carolina and Illinois for the construction of the liners; and finally hired an independent Illinois contractor to install the liners in defendant's tanks. There was no manufacturing performed in Kansas, and at no time did any of defendant's personnel visit Kansas. The only direct contact the parties had with each other was by telephone and by invoice which was later mailed to defendant by plaintiff.

Plaintiff commenced this action against defendant to recover the price of the liners upon defendant's refusal to make payments thereon. Personal service of summons was made upon defendant outside the State of Kansas based upon the alleged "performance" of a contract within the state, as provided by the Kansas long arm statute, K. S. A. 1973 Supp. 60-308 (*b*) (5). Thereafter, defendant moved to dismiss the petition on the ground the court could not exercise *in personam* jurisdiction over it, and the district court sustained the motion.

K. S. A. 1973 Supp. 60-308 (*b*) provides in part:

"(b) *Submitting to jurisdiction—process.* Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

. . . . . . . . . . . .

"(5) Entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state;"

Statutory provisions similar to 60-308 (b) (5) have been enacted in approximately seven other states, including Texas, Minnesota and Iowa. This type of statute is commonly referred to as a "single act" statute in that it permits the exercise of personal jurisdiction over a nonresident defendant based solely on the making or performance of a single contract within the state. An exhaustive survey of cases arising under such statutes can be found in 23 A. L. R. 3d 551, at p. 589, and 20 A. L. R. 3d at 1201, p. 1205. In addition, an analysis of the Kansas long arm statute, including subsection (b) (5), is contained in 20 Kan. L. Rev. 1, Casad, *Long Arm and Convenient Forum.*

It is plaintiff's contention that the contract involved in this action brings defendant within subsection (b) (5) of the statute in that the contract was partially performed in Kansas by plaintiff's having made the arrangements to supply the material for the fabrication and installation of the liners. In considering this issue, effect must be given to our opinions in *Woodring v. Hall,* 200 Kan. 597, 438 P. 2d 135; *Tilley v. Keller Truck & Implement Corp.,* 200 Kan. 641, 438 P. 2d 128; and *White v. Goldthwaite,* 204 Kan. 83, 460 P. 2d 578. These cases were concerned with the application of K. S. A. 60-308 (b) (1) (prior to 1971 amendment) which provided for the exercise of *in personam* jurisdiction over any person as to any cause of action arising from "the transaction of any business" within this state. As we acknowledged in both *Woodring* and *White,* 60-308 clearly reflected legislative intention to exert jurisdiction over nonresident defendants to the extent permitted by the due process clause of the Fourteenth Amendment, and whether due process is satisfied depends upon the nature and quality of the activities of the defendant, which must be determined on a case by case basis.

*Woodring* also stated that, within the meaning of 60-308 (b) (1), "business" is transacted within this state when an individual is within or enters this state in person or by agent and, through

dealing with another within this state, effectuates or attempts to effectuate a purpose to improve his economic conditions and satisfy his desires. We are justified in assuming the legislature had knowledge of the foregoing statements when the amendment was made in 1971. It follows that the amendment was made to avoid the definition of "[t]he transaction of any business within this state," and to broaden the effect of the statute. Notwithstanding the legislative purpose, the 1971 amendment remains subject to the requirements of due process. The question we must resolve is: Does the due process clause of the Fourteenth Amendment permit personal jurisdiction to be extended to the defendant under the facts and circumstances of this case?

By necessity, a determination of this issue depends upon the standards set forth by the United States Supreme Court in its decisions interpreting the scope of due process as it relates to a state court's jurisdiction over nonresident defendants. Beginning with the case of *Pennoyer v. Neff*, 95 U. S. 714, 24 L. Ed. 565, the permissible scope of jurisdiction has gradually expanded. At first it was thought that due process permitted the exercise of jurisdiction over a non-consenting defendant only if he was "physically present" within the state. The court in *Pennoyer* reasoned that the authority of every tribunal was limited to the extent of its *de facto* power over the defendant's person. This narrow approach to jurisdiction was substantially altered in the landmark case of *Internat. Shoe Co. v. Washington*, 326 U. S. 310, 90 L. Ed. 95, 66 S. Ct. 154, 161 A. L. R. 1057. In place of the "power" theory enunciated in *Pennoyer*, the court said that due process required only "certain minimum contacts" with the forum state such that the maintenance of the suit would not offend "traditional notions of fair play and substantial justice." This test obviously was not intended to be applied in a purely mechanical or quantitative manner. Due process, the court said, depends rather on the quality and nature of the activity in relation to the fair and orderly administration of the laws. In order to exert jurisdiction over a nonresident there must be sufficient contacts or ties with the state of the forum to make it reasonable and just according to traditional concepts of "fair play and substantial justice." Although the *International Shoe* standard of "minimum contacts" maintains much of its validity today, it can hardly be said to provide a precise and definitive standard. Application of the test must be worked out with reference to the facts

of each individual case. (*Southern Machine Company v. Mahasco Industries, Inc.,* 401 F. 2d 374 [U. S. C. A. 6th Cir. 1968].)

When the basis of personal jurisdiction is a single act, as with the instant case, the most relevant United States Supreme Court case is *McGee v. International Life Ins. Co.,* 355 U. S. 220, 2 L. Ed. 2d 223, 78 S. Ct. 199. In that case the court upheld a California state court's jurisdiction over an out-of-state insurance company whose only contacts with the state were the mailing of a reinsurance certificate and premium notices into the state, and the receiving of the signed certificate and premium payments by mail from the state on only one policy insuring a California resident. The defendant had no officer or agent within the forum state, and literally had no physical connection with that state. Nonetheless, the court permitted the exercise of jurisdiction over the Texas insurance company in the suit brought by the California beneficiary. Mr. Justice Black, speaking for the court, stated that it was "sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State." (p. 223.) The court noted there is a trend toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. It is significant that in the *McGee* case there was a transaction involving the sale of an insurance policy to an individual residing in the forum state. The court emphasized the practical financial obstacles in requiring a litigant to travel to the corporate defendant's jurisdiction in order to enforce a relatively small claim. The state has a "manifest interest" in providing effective means of redress for its residents when their insurers refuse to pay claims.

In *Hanson v. Denckla,* 357 U. S. 235, 2 L. Ed. 2d 1283, 78 S. Ct. 1228, the court again addressed itself to the question. Suit was originally brought in a Florida court in an unsuccessful attempt to secure jurisdiction over a nonresident trustee. In holding that the state court lacked *in personam* jurisdiction because of insufficient "minimum contacts" with the state, the court warned that the trend toward broadening personal jurisdiction over nonresidents does not mean the eventual demise of all restrictions. The court reasoned:

". . . Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him. . . ." (p. 251.)

The court also stated that the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state, and that the application of the "minimum contacts" rule will vary with the quality and nature of defendant's activity; but it is essential in each case that there be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State," thereby invoking the "benefits and protections of its laws."

Applying the foregoing standards to the facts in this case, exercise of *in personam* jurisdiction over the nonresident defendant would violate the due process provisions of the Fourteenth Amendment. Defendant did not have sufficient contacts with Kansas so that the maintenance of the suit would not offend the traditional notions of fair play and substantial justice. The entire performance under the contract occurred in states other than Kansas. No manufacturing took place in Kansas. The goods named in the contract were never brought into this state and none of defendant's personnel or agents ever entered the state in regard to this contract. In fact, the only actual contact defendant had with this state was by virtue of a telephone call it placed to plaintiff's office in Wichita. Although plaintiff mailed defendant a unilateral invoice stating that place of payment was to be at Wichita, we do not believe this contract alone is sufficient to establish a substantial connection with the state. In effect, plaintiff corporation merely acted as a clearing-house for what was essentially an out-of-state transaction. The tests set forth in *International Shoe* and *Hanson* contemplate more substantial and voluntary contacts than those disclosed in the present case.

In addition, we do not believe it can be said that defendant purposefully availed itself of the privilege of conducting activities in Kansas when, in fact, defendant conducted no activities within this state other than the placing of an order for goods. Merely negotiating a sales transaction over the telephone with persons residing in Kansas does not invoke the benefits and protections of the laws of Kansas.

We are not presented with a factual situation such as in the *McGee* case, where the state had a manifest interest in protecting a resident individual from the hardships of recovering on an insurance policy from a nonresident corporation in a foreign state. The instant case involved a contract for the sale of goods between two busi-

ness corporations equally capable of litigating in a foreign state and it would not be unjust to require plaintiff to bring suit in another forum which has a more substantial connection with the transaction. Accordingly, we conclude the transaction upon which the present action was founded fails to meet the due process requirements for the exercise of *in personam* jurisdiction over the nonresident defendant.

Support for this conclusion is found in a recent Texas case decided under a similar long arm statute. In *Trinity Steel Co. v. Modern Gas Sales & Service Co.*, 392 S. W. 2d 861 (Tex. Civ. App. 1965), a Texas corporation sold defendant New Jersey corporation a propane transport trailer located in New Jersey. The contract was oral and was consummated over the telephone. After the sale was consummated the plaintiff sent the defendant an invoice requiring payment to be made in Texas. The court held the New Jersey corporation by no act personally availed itself of the privilege of conducting activities in the State of Texas and that those "minimal contacts" which are a prerequisite to personal jurisdiction of the courts of Texas over a nonresident defendant were lacking.

Affirmed.