CONTINENTAL AMERICAN CORPO-
RATION, d/b/a Pioneer Balloon
Company, Plaintiff-Appellee,

v.

CAMERA CONTROLS CORPORATION,
d/b/a Max Balloon Company,
Defendant-Appellant.

No. 81–2264.

United States Court of Appeals,
Tenth Circuit.

Nov. 12, 1982.

Alexander B. Mitchell II, of Sargent, Klenda, Haag & Mitchell, Wichita, Kan., for plaintiff-appellee.

Robert T. Cornwell and James L. Burgess of Fleeson, Gooing, Coulson & Kitch, Wichita, Kan., for defendant-appellant.

Before HOLLOWAY, McWILLIAMS and BARRETT, Circuit Judges.

HOLLOWAY, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

This is an appeal from a judgment entered after a trial to the court in the amount of $5,158.83 in an action for breach of contract. Subject matter jurisdiction was founded on diversity, 28 U.S.C. § 1332.[1]

_____

1. While the judgment was for the reduced lia-    bility of $5,158.83, the complaint and amended

Defendant-appellant Camera Controls Corporation, doing business as Max Balloon Corporation, contends that the district court lacked valid personal jurisdiction over it under the Kansas long-arm statute, K.S.A. § 60–308(b)(5).

## I

The facts outlined below are pertinent to defendant's attack on the district court's finding of personal jurisdiction. They are all related from plaintiff's evidence, since the defendant presented no evidence and rested entirely on its challenge to the sufficiency of plaintiff's evidence to establish valid personal jurisdiction over defendant. (III R. 32–33).

Plaintiff Continental American Corporation, doing business as Pioneer Balloon Company, is a Kansas corporation with its principal place of business in Wichita, Kansas. (I R. 9, 16). In August 1979, plaintiff purchased the balloon manufacturing business known as Pioneer Balloon Company (Pioneer) from Sherwood Medical Industries, Inc. (III R. 20), incorporated and having its principal place of business in Missouri. The purchase included Pioneer's manufacturing facility in Ohio and its accounts receivable directly involved in the balloon operation. (III R. 21).

One of Pioneer's accounts receivable at the time of plaintiff's purchase was that of the defendant, a California corporation whose principal place of business is in North Hollywood, California. (I R. 9, 16). The two orders creating this account receivable were placed with a Pioneer Balloon sales representative in California. From there the orders were sent to the factory in Ohio.

The balloons were shipped directly from the factory to defendant. (III R. 16). The shipments represented $2,628 of merchandise each. Defendant claimed it had been billed twice for one shipment. (III R. 14). Plaintiff notified defendant of the assignment of the account receivable as part of the purchase and requested that payment be made to plaintiff. (I R. 25). Defendant returned an account statement to plaintiff in Kansas denying it owed $2,628. Plaintiff submitted, by letter to defendant, documentation that showed defendant had received two shipments of $2,628 value each and had not, in fact, been double-billed. Apparently defendant had paid for one $2,628 shipment but not the other.

Defendant then placed two orders for balloons with plaintiff after plaintiff's acquisition of Pioneer. (III R. 24). One of these orders—apparently having been received and paid for—is not at issue herein. The consequence of the other order for some $17,991.61 worth of balloons is the subject of this dispute. The circumstances of this order require some explication.

After plaintiff's purchase of Pioneer Balloon, an employee of Sherwood made attempts to collect the $2,628 debt on behalf of plaintiff by telephone and mail contacts with defendant's president. (III R. 13). During a telephone conversation in October 1979 concerning collection, plaintiff's president and defendant's president agreed to place and ship another order of balloons if the disputed $2,628 amount was paid.[2] (II R., Plaintiff's Exhibit No. 4; III R. 14, 31). This order, priced at $17,991.61, was shipped from Ohio shortly thereafter. The location of plaintiff's president during the telephone

---

complaint had sufficient general averments of diversity and of the fact that the amount in controversy exceeded $10,000. The existence of the requisite amount in controversy at the time the amended complaint was filed was conceded by defense counsel at trial. (III R. 5). The fact that there had been payments on the original indebtedness of $20,619.61 alleged in the amended complaint did not destroy the district court's jurisdiction, once it was properly acquired. *Emland Builders, Inc. v. Shea,* 359 F.2d 927, 929 (10th Cir.). It is fundamental, of course, that the amount in controversy is not dependent on the amount actually recovered by plaintiff. *Fehling v. Cantonwine,* 522 F.2d 604, 605 (10th Cir.). *See also St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845.

2. The district court found that the shipment of both post-acquisition orders was conditioned upon payment of the $2,628 debt acquired from Sherwood. We find nothing in the record to indicate that both orders were so conditioned. (II R. Plaintiff's Exhibit No. 4; III R. 24, 31). However, in light of our disposition, this discrepancy is of no moment.

call does not appear in the record. In November, an invoice for the shipment was sent to defendant. The invoice, printed on a Sherwood Medical Industries form, indicated that the order was produced in Ohio and that remittance should be sent to plaintiff in Kansas. (II R. Plaintiff's Exhibit No. 5).

There were subsequent communications between the parties concerning the amount owed. In these communications defendant's president stated that he had sent a payment of $6,203.72 to Sherwood Medical Industries in Missouri which was never received and an additional payment of $17,-991.61 to plaintiff in Kansas, also never received. These communications proved unsatisfactory to plaintiff. (II R., Plaintiff's Exhibit No. 6). Plaintiff's president reminded defendant's president to remit to Kansas, not Missouri. After continued nonpayment, plaintiff brought this federal suit in September 1980 for the money owed by the defendant. Prior to filing the complaint, plaintiff had received two payments in Kansas of $1000 from defendant. (III R. 26). Since commencement of suit, plaintiff has received 13 payments, reducing the amount owed to $5,158.83, the amount for which judgment was entered.[3]

The answer averred that the district court lacked personal jurisdiction over defendant. (I R. 16–17). Defendant also moved orally at trial to dismiss the complaint for lack of personal jurisdiction, which motion was denied. (III R. 5–8). After a brief trial to the court, judgment was entered for plaintiff in the amount of $5,158.83. Defendant moved to set aside the judgment, again asserting a lack of personal jurisdiction. The district court overruled the motion, stating that (I R. 25–26):

... the Court finds that the plaintiff purchased a certain balloon business of Sherwood Medical Industries and received as a portion of that purchase the account receivable from defendant; that

the plaintiff duly notified the defendant of the assignment of the account and requested that payment be made to the plaintiff; that subsequent to the acquisition of the balloon business by plaintiff, the defendant contracted directly with the plaintiff to make two additional purchases of balloons from the plaintiff; that prior to agreeing to send the two additional orders to the defendant, the plaintiff's president obtained the promise of the defendant's president to pay plaintiff the previous balance due on the purchase from Sherwood Medical; that as a consequence of these transactions and events, this Court does have jurisdiction to adjudicate this account. In addition thereto, it is the Court's finding that the defendant has made the last 16 regular and separate payments to the plaintiff, which gives rise to the balance in dispute and for which judgment has been entered. It would appear to the Court that the initial obligation, being the Sherwood Medical Industries account, has now been satisfied and the Court so finds. As a consequence, defendant's motion is also a moot one.

IT IS, THEREFORE, ORDERED that defendant's motion should be and it is hereby overruled.

On appeal, defendant makes two interrelated contentions regarding personal jurisdiction. First, defendant argues that there is no evidence of any contact by defendant with the State of Kansas so that plaintiff's proof on the jurisdictional issue failed to establish a sufficient connection with the forum. Second, defendant asserts that the exercise of long-arm jurisdiction under K.S.A. § 60–308(b)(5) in these circumstances would violate due process principles. Relying on *Misco-United Supply, Inc. v. Richards of Rockford, Inc.,* 215 Kan. 849, 528 P.2d 1248, defendant contends that the facts adduced at trial cannot satisfy the minimum contacts requirement of *International Shoe* and its later refinements.

---

**3.** The district court found that 16 payments were made. Our examination of the ledgers introduced into evidence reveals 15 payments in all. (II R. Plaintiff's Exhibits Nos. 7, 8). We are satisfied that any discrepancy in the number of payments received by plaintiff after commencing this suit is of little importance. As noted, the evidence reveals that two payments were made to plaintiff in Kansas before the complaint was filed.

## II

### THE KANSAS LONG–ARM STATUTE

K.S.A. § 60–308(b)(5), the jurisdictional statute relied on by plaintiff, provides in pertinent part:

Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits said person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

\* \* \* \* \* \*

(5) Entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state; ...

■ As we understand defendant's argument, the two partial payments were not shown to have been applied to the Sherwood debt assigned to plaintiff. Additionally, there was no proof of any connection between the Kansas and the Sherwood debt. Therefore, to the extent the district court adjudicated liability for the Sherwood indebtedness, it lacked personal jurisdiction over defendant. Regarding the post-acquisition purchase from plaintiff, defendant asserts a complete lack of evidence bringing this case within the language of K.S.A. § 60–308(b)(5).

While plaintiff's evidence that plaintiff and defendant entered a contract "to be performed in whole or in part by either party" in Kansas was less than ideal, we are persuaded that it was sufficient to satisfy plaintiff's burden. It is uncontradicted that after plaintiff's acquisition of Pioneer, notification of the assignment was tendered to defendant. (III R. 13–14). The purchase at issue, though conditioned on payment of the Sherwood account receivable, was negotiated directly with plaintiff. Plaintiff's president testified without contradiction that two partial payments were received in Wichita. (III R. 26). These two payments, along with the receipt of thirteen payments in Wichita after this action was commenced, provide circumstantial proof that

the parties agreed some performance would be rendered in the forum state. We hold, therefore, that the present events created a contract to be performed in part in Kansas, and that these events satisfy the terms of K.S.A. 60–308(b)(5). *See Prather v. Olson,* 1 Kan.App.2d 142, 562 P.2d 142, 145–46. Furthermore we agree with the district court that the course of payments were applied to the older Sherwood debt first thereby mooting any question as to the court's jurisdiction over that portion of the sums owed. *State v. United States Fidelity & Guaranty Co.,* 81 Kan. 660, 106 P. 1040, 1045 (1910); *see* also 60 Am.Jur. *Payments* §§ 91, 92.

In applying K.S.A. § 60–308(b)(1) and (5), the Kansas Court of Appeals re-stated in the *Prather* case, *supra,* 562 P.2d at 145, three basic factors for long-arm jurisdiction earlier identified in *White v. Goldthwaite,* 204 Kan. 83, 460 P.2d 578, 582:

(1) the nonresident must purposefully do some act or consummate some transaction in the forum state; (2) the claim for relief must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protections of the laws of the forum state afforded the respective parties, and the basic equities of the situation...

We are satisfied that the trial court's ruling here was not in conflict with these standards. We will however discuss the due process issue further below.

## III

### DUE PROCESS LIMITATIONS ON THE EXERCISE OF PERSONAL JURISDICTION

■ We are bound, of course, by the Supreme Court's decisions on the requirements of the Due Process Clause of the Fourteenth Amendment on the exercise of *in*

*personam* jurisdiction. In applying those decisions, here we will also analyze two other opinions, one from the Kansas Court and one from our court, because of their factual similarities to our problem. *See Misco-United Supply, Inc. v. Richards of Rockford, Inc.,* 215 Kan. 849, 528 P.2d 1248; and *Pedi Bares, Inc. v. P & C Food Markets, Inc.,* 567 F.2d 933 (10th Cir.). Furthermore we note that in construing the provisions of the Kansas long-arm statute, the Kansas Court has said the statute "clearly reflected legislative intention to exert jurisdiction over nonresident defendants to the extent permitted by the due process clause of the Fourteenth Amendment..." *Misco-United Sup., Inc. v. Richards of Rockford, Inc., supra,* 528 P.2d at 1251; *and see White v. Goldthwaite,* 204 Kan. 83, 460 P.2d 578 (1969); *International Pizza Hut Franchise Holders Ass'n, Inc. v. Supreme Pizza, Inc.,* 464 F.Supp. 65, 67 (D.Kan.).

In *Misco-United* the plaintiff Kansas corporation contracted with defendant Illinois corporation for the purchase of five tank liners. Plaintiff had made three prior sales to defendant; in each transaction the terms of the sale provided that the place of payment would be Kansas and payment was received there. *Misco-United,* 528 P.2d at 1250. On the failure of defendant to pay for the order in question, plaintiff brought suit, claiming jurisdiction under K.S.A. § 60–308(b)(5). *Id.*

The Kansas Court held that the transaction failed to meet the requirements of the Due Process Clause for *in personam* jurisdiction over the Illinois corporation. *Id.* at 1252–53. The court noted that the plaintiff had ordered materials for the liners from North Carolina, arranged for construction of them in North Carolina, Texas and Illinois, and had hired an Illinois independent contractor to install them. *Id.* at 1250. The only contact on this order with the forum State of Kansas, as emphasized by the court, was a single telephone call defendant placed to plaintiff in Wichita, in addition to which the plaintiff mailed defendant an invoice stating payment was to be made at Wichita. *Id.* at 1253. The plaintiff corporation, the court held, "merely acted as a clearinghouse for what was essentially an out-of-state transaction." *Id.*

The Kansas Court said that *International Shoe, supra,* and *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), demanded more substantial and voluntary contacts with the forum. The court distinguished *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1950) by noting that the *Misco-United* transaction did not involve the weighty state interest in providing a forum for residents to enforce insurance policies against nonresident defendants. Rather, the matter "involved a contract for the sale of goods between two business corporations equally capable of litigating in a foreign state and it would not be unjust to require plaintiff to bring suit in another forum which has a more substantial connection with the transaction." *Misco-United,* 528 P.2d at 1253.

We feel that *Pedi Bares, supra,* is more persuasive. There we upheld the assertion of personal jurisdiction over a nonresident defendant wholesale grocer whose customers ordered goods from the Kansas plaintiff. The orders were sent directly to Kansas by defendant's customers. The goods were manufactured in Kansas. *Pedi Bares,* 567 F.2d at 935. The goods were shipped to defendant's customers and defendant was billed. Defendant made partial payments to plaintiff in Kansas. *Id.* at 937. We observed that defendant had acted purposefully in seeking the contractual relationship and that the consequences in Kansas of nonpayment were foreseeable, stating (*Id.* at 937):

Kansas has a manifest interest in providing redress for its residents injured by nonresidents engaged in any activity which the state treats as subject to special legislation. *See Hanson v. Denckla,* 357 U.S. at 252, 78 S.Ct. 1228. That interest includes protection of its residents against breach of a contract by a nonresident for the purchase of goods made in Kansas. The convenience of witnesses is about equally balanced. P & C has shown no inequities which result from a Kansas suit.

In contrasting the facts of *Pedi Bares* from *Misco-United,* we remarked that in the latter case the only contact with the forum was a phone call from defendant to plaintiff and that in *Misco-United* the goods there were manufactured outside of Kansas. *Id.* at 937.

· [3] It is fundamental that the mere quantum of contacts between the forum and the defendant is not determinative of this issue. "Whether due process is satisfied," it has been said, "must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." *International Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95 (1945). The minimum contacts analysis serves two critical functions: "It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980).

We recognize that modern commercial transactions often involve little contact with the forum beyond that of mail and telephone communications, *see, McGee v. International Life Ins. Co.,* 355 U.S. 220, 222–23, 78 S.Ct. 199, 200–01, 2 L.Ed.2d 223 (1950), and that defending a suit in a foreign jurisdiction is not as burdensome as in the past. *Hanson v. Denckla,* 357 U.S. 235, 250–51, 78 S.Ct. 1228, 1237–38, 2 L.Ed.2d 1283 (1958). Finally, we recognize that the nature of due process in the single contract context is a matter of some dispute. *See Lakeside Bridge & Steel Co. v. Mountain State Constr. Co., Inc.,* 445 U.S. 907–11, 100 S.Ct. 1087–89, 63 L.Ed.2d 325, (White, J., dissenting from denial of certiorari), and cases cited therein.

Nonetheless, we believe that on the present facts the "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer,* 311 U.S. 457,

463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)); *see generally, Mississippi Interstate Exp. Co. v. Transpo, Inc.,* 681 F.2d 1003 (5th Cir.1982). Unlike the situation in *Misco-United,* here part performance of the contract, *e.g.,* partial payments of the contractual amount, did take place in Kansas. *See, Standard Leasing Co. v. Performance Systems, Inc.,* 321 F.Supp. 977 (N.D.Tex.1971). Unlike the unilateral activity of plaintiff in *Misco-United,* it can be fairly said that the defendant here availed itself of the privilege of business contacts with Kansas offices. In addition to the two partial payments made to Wichita before suit, the defendant also admitted a response made in January 1980 to Wichita accountants examining Pioneer's financial statements. This communication denied the $2,628 debt but did not dispute that for the $17,991.61 invoice. (III R. 26; I R. 10, 15, 16).

Further, by ceasing to make partial payments, defendant should certainly have foreseen the possibility of being haled into court in Kansas. *See Kulko v. California Superior Court,* 436 U.S. 84 at 97–98, 98 S.Ct. 1690 at 1699–700, 56 L.Ed.2d 132. While we acknowledge the limits of foreseeability in minimum contacts analysis, *World-Wide Volkswagen,* 444 U.S. at 295–299, 100 S.Ct. at 566–68, it is apparent to us that here the defendant could have refused to make the purchase, which was conditioned on its promise to pay the Sherwood debt, and thereby alleviated the risk of defending a suit commenced in Kansas. *Mississippi Interstate,* 681 F.2d at 1007–1008 & n. 2. Though it is true that in *Pedi Bares* the manufacturing took place in Kansas, we do not think the situation here is decidedly different. Plaintiff's factory was located in Ohio, but plaintiff is indisputably a Kansas resident. Unlike *Misco-United,* the plaintiff herein undertook the manufacturing itself, albeit from a plant in another state. The Kansas plaintiff's employees made the balloons shipped to defendant. In consideration of the forum state's "manifest interest," *Pedi Bares,* 567 F.2d at 937, the need for interstate commercial certainty, *Lakeside Bridge,* 445 U.S. at 911, 100 S.Ct. at 1089, and defendant's activities, we can-

not say there was a denial of due process by the exercise of jurisdiction. In accord with our *Pedi Bares* opinion, we are persuaded that the exercise of personal jurisdiction over defendant did not violate the principles of the Due Process Clause.

AFFIRMED.