**MARCUS FOOD COMPANY, a Kansas Corporation, Plaintiff,**

v.

**FAMILY FOODS OF TALLAHASSEE, INC.; VRD of Columbus, Inc.; VRD of Ft. Lauderdale, Inc.; VRD of Cincinnati, Inc.; and Vincent Doria, Defendants.**

**No. 89–1568–K.**

United States District Court, D. Kansas.

Jan. 29, 1990.

Jeffery L. Carmichael, Morris, Laing, Evans, Brock & Kennedy, Wichita, Kan., for plaintiff.

Lee Thompson, Martin, Pringle, Oliver, Wallace & Swartz, Wichita, Kan., for defendants.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

The plaintiff, Marcus Food Company, has brought the present action for sums due under an open account for the sale of beef to defendants Family Foods of Tallahassee, Inc., VRD of Columbus, Inc., VRD of Ft.

Lauderdale, Inc., and VRD of Cincinnati, Inc. In addition, Marcus Food makes a claim against defendant Vincent Doria, president of the defendant corporations, alleging detrimental reliance upon a personal guaranty.

The defendants have moved to dismiss the complaint for lack of personal jurisdiction. A hearing on the matter was scheduled for January 22, 1990. However, the court has at hand the briefs filed by the parties and has determined that oral argument is unnecessary for the resolution of the present matter. Accordingly, for the reasons stated herein, the defendants' motion to dismiss is hereby denied.

Plaintiff Marcus Food is a Kansas corporation. Defendants Family Foods and VRD of Ft. Lauderdale are Florida corporations. Defendant VRD of Cincinnati is an Ohio Corporation, while VRD of Columbus is a Delaware corporation. The VRD corporations are entities wholly owned by Family Foods, which is the sole stockholder in each corporation. Vincent Doria is the president and the sole shareholder of Family Foods, and the president of the three VRD corporations. None of the defendants maintain offices in Kansas, and no agent of the defendants is alleged to have entered Kansas.

In January or February, 1989, Ron Sills, a salesman for Marcus Food, contacted Family Foods by telephone and extended an offer to provide boxed beef to Family Foods. Family Foods, however, rejected the offer. Sills again phoned Family Foods in March or April, 1989, but, as before, no agreement was reached.

In June of 1989, Ed O'Herron, vice-president of Family Foods, telephoned Sills and indicated that Family Foods was in a position to meet the requirements of Marcus Food. On June 13, 1989, O'Herron telefaxed and mailed a letter to Sills at the plaintiff's Wichita address.

O'Herron's letter states that under the agreement, orders for beef products would be sent from O'Herron's office in Tallahassee to Marcus Food's Wichita office. While the letter is silent on the matter, the agreement entered into between the parties also required (according to Sill's affidavit) invoicing to be done in Wichita, and payment was to be made in Wichita. Sills' averments are corroborated by the course of dealing between the parties. During the course of the contract, Family Foods sent orders to the plaintiff in Wichita, invoices were forwarded from Wichita by the plaintiff, and payments were made by Family Foods to the plaintiff in Wichita.

In addition to the general requirements of the agreement, Marcus Food also sought a personal guaranty by Doria and his wife of sums due under the agreement. According to the affidavit of Sills, O'Herron had represented that Doria was willing to execute the guaranty required by Marcus Food. On June 12, 1989, Jerry Marcus, the president of Marcus Food, mailed a copy of the guaranty agreement to Doria. However, Doria never signed or returned the guaranty.

In July, 1989, Sills was again contacted by O'Herron. O'Herron sought to reach an agreement, on the same terms as the June agreement, for Marcus Food to supply boxed meat products to the three VRD corporations. Marcus Food agreed, and began to supply the requested meat products. According to Sills, the conversations relating to the July agreement were initiated by O'Herron.

Under the agreements between the parties, Marcus Food supplied boxed meat products to Western Sizzlin restaurants operated by the defendants. The agreement contained no requirement that the meat be provided from Kansas. The Western Sizzlin restaurants supplied under the agreement were located outside Kansas. Plaintiff alleges that the defendants have failed to pay the $170,000.00 balance due on their account.

The parties agree that all of the communications underlying their relations occurred by telephone, telefax, or mail. No agent of the defendants entered the State of Kansas.

*1. Jurisdiction over the corporate defendants.*

The plaintiff argues that the court may assert jurisdiction over the corporate defen-

dants pursuant to K.S.A. 60–308(b)(1) and (5). The first provision, subsection (b)(1) of the Kansas long-arm statue, provides for jurisdiction in causes of action arising out of the "[t]ransaction of any business within this state." Subsection (b)(5) provides jurisdiction for causes of action arising from the "entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state."

■ The exercise of personal jurisdiction under the long-arm statute in a given case requires two determinations: first, that the case falls within the statutory parameters of K.S.A. 60–308(b); and second, that the exercise of jurisdiction does not violate the due process clause of the Fourteenth Amendment. *Green Country Crude, Inc. v. Avant Petroleum, Inc.*, 648 F.Supp. 1443, 1445 (D.Kan.1986). The plaintiff must satisfy both requirements by a *prima facie* showing before the court may exercise jurisdiction. *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731 (10th Cir.1984), *cert. denied*, 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985). Factual doubts are resolved in favor of the plaintiff. *Ammon v. Kaplow*, 468 F.Supp. 1304 (D.Kan.1979).

In the resolution of the present matter, clearly the most important case is the decision of this court in *Green Country*. Both parties rely heavily upon competing exegeses of *Green Country* for support of their positions. Accordingly, the decision in that case will be briefly reviewed.

The dispute in *Green Country* centered on a contract for the sale of crude oil. The defendant was a New York corporation with its principal place of business in Texas. The plaintiff was a Kansas corporation with its principal place of business in Kansas. The parties had entered into an agreement under which the defendant would purchase, in Oklahoma, a certain amount of crude oil. The agreement provided that Texas law would govern its performance. The negotiations preceding the agreement had been initiated in Texas by the plaintiff. At no time did any agent of the defendant enter the State of Kansas. 648 F.Supp. at 1444.

The court dismissed the action for lack of personal jurisdiction, concluding that jurisdiction was not authorized under K.S.A. 60–308(b)(1) or (b)(5), and that the exercise of jurisdiction would violate due process. In finding that the defendant had not transacted business within Kansas, the court stated that the only facts supporting such a finding were the delivery of the contract to the plaintiff in Kansas, and subsequent telephone and mail communications between the parties. 648 F.Supp. at 1448. Against this,

> the negotiations were initiated, and the contract solicited, by plaintiff in Texas. Defendant drafted the contract and amendments, and accepted them, in Texas. The laws of Texas, not Kansas, govern the agreement and all related disputes. Defendant's entire performance of its contractual obligations, including acceptance of the oil and payment to Green Country, took place in Oklahoma, not Kansas. Avant never physically entered Kansas; all personal contact between its agents and those of Green Country occurred in Texas and Oklahoma. The telephone and mail communications with plaintiff are no more than would be expected with any purchase contract, and they were made only in response to the contract solicited by plaintiff.

648 F.Supp. at 1448–49.

The court also found that jurisdiction could not be supported under subsection (b)(5) as a contract to be performed in whole or in part in Kansas. Neither party was required to perform any part of its contractual obligations in Kansas. Although the plaintiff had purchased oil in Kansas for delivery to the defendant in Kansas, this was not a requirement of the contract itself. As for the defendant, the court stated that there was nothing in the contract which required it "to perform any of its obligations in Kansas." 648 F.Supp. at 1449.

Finally, the court found that, even assuming the long-arm statute was applica-

ble, jurisdiction could not be exercised consistent with due process since there were insufficient contacts with Kansas. The court stressed that the defendant had never physically entered Kansas, had not initiated the contract negotiations, had engaged in no negotiations in Kansas, and had placed no orders for goods in Kansas. 648 F.Supp. at 1451. In addition, the court noted, the defendant's invocation of Texas law in the contract indicated an "effective, if not deliberate, *avoidance* of any availment of the benefits or protections of the laws of Kansas." *Id.* (emphasis in original).

█ In the present case, the court has concluded that it possesses personal jurisdiction over the corporate defendants. The defendants are partially right—there was no transaction of business under (b)(1) of the long-arm statute. However, applying the facts of the present matter in the light most favorable to the plaintiff, the requirements of (b)(5) and of due process are satisfied.

Long-arm jurisdiction under subsection (b)(1) is not present since the defendant cannot be considered to have transacted business in Kansas. The main contact of the defendants with Kansas—payments sent to the plaintiff in Wichita—are insufficient to create jurisdiction under (b)(1). *See Oswalt Industries, Inc. v. Gilmore,* 297 F.Supp. 307 (D.Kan.1969). In *Oswalt,* Judge Brown indicated (by analogy to Illinois law) that the "transacting business" provision would not create jurisdiction over a nonresident purchaser merely because the contract called for payment in Kansas. 297 F.Supp. at 313 n. 8 (citing *Purdy Co. v. Argentina,* 333 F.2d 95 (7th Cir.1964), *cert. denied,* 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965)).

The Tenth Circuit has reached a similar conclusion. In *Misco Leasing, Inc. v. Vaughn,* 450 F.2d 257 (10th Cir.1971), the defendant was an Oklahoma resident who had executed a guaranty of payment contract to a Kansas lessor. The guaranty had been issued in connection with the lease of equipment to an Oklahoma lessee. The Court of Appeals found that the defen-

dant's execution of the guaranty did not amount to "transacting business" in Kansas merely because payments under the lease were required to be made in Kansas.

█ But if the contacts with Kansas are insufficient to fall within the scope of subsection (b)(1), they are still sufficient to satisfy the terms of subsection (b)(5) as an agreement to be performed in whole or in part in Kansas. As noted by the court in *Green Country,* the adoption of subsection (b)(5) in 1971 was intended "to broaden the scope of the statute, extending service in contract cases where a nonresident may have committed a breach without ever setting foot in Kansas." 648 F.Supp. at 1449.

In *Green Country,* the court found that subsection (b)(5) did not apply since the nonresident purchaser had no obligation under its contract to perform any action in Kansas. Unlike the defendant in that case, the defendants here affirmatively undertook to make payments to the plaintiff in Wichita. The contract between the parties was one in which the parties' obligations were to be performed, in part, in Kansas. The defendants were required to make payments in Kansas. The plaintiff was required to submit invoices from Kansas for goods shipped under the contract. As a result, subsection (b)(5) renders the defendants subject to the exercise of jurisdiction in Kansas. *See Continental American Corp. v. Camera Controls Corp.,* 692 F.2d 1309 (10th Cir.1982); *Pedi Bares, Inc. v. P. & C. Food Markets, Inc.,* 567 F.2d 933 (10th Cir.1977).

█ Nor do constitutional considerations prohibit the exercise of long-arm jurisdiction over the corporate defendants in the present case. In determining whether a nonresident defendant's contacts with the forum state are strong enough to warrant the exercise of personal jurisdiction over the defendant, the Tenth Circuit has endorsed a three-part test. *Rambo v. American Southern Ins. Co.,* 839 F.2d 1415, 1419 n. 6 (10th Cir.1988). First, the defendant must have sufficient contacts with the forum state so that the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. *World-*

*Wide Volkswagen Corp v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Second, the defendant must have purposefully availed himself of the privilege of conducting activities in the forum state. *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Id.,* at 253, 78 S.Ct. at 1239–40. Jurisdiction is proper where the nonresident's contacts with the forum state "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985) (emphasis in original).

Third, the quality and nature of the defendant's contacts must be such that it is reasonable, "in the context of our federal system of government," to require the defendant to appear in the forum state. *International Shoe,* 326 U.S. at 317, 66 S.Ct. at 158–59; *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184.

> A court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies."

*Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1034, 94 L.Ed.2d 92 (1987) (quoting *World Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564).

In the present case, the defendant has sufficient contacts with Kansas to permit the exercise of personal jurisdiction. Unlike *Green Country,* the contractual relationship here arose at the initiative of the nonresident defendants. Although the plaintiff's salesman first contacted defen-

dant Family Foods, the parties' preliminary discussions were unsuccessful, and no agreement was reached. Only after the vice-president of Family Foods initiated a renewal of the negotiations in June, 1989 did a contract arise.

And, also unlike the situation presented in *Green Country,* the contract here required the parties to perform at least part of their respective obligations in Kansas. Plaintiff Marcus Food was required to submit invoices for its shipped goods from Kansas. Defendant Family Foods sent its orders for the goods to the plaintiff's office in Wichita. And Family Foods was required to pay the sums due under the contract to the plaintiff in Wichita.

In discussing due process, the defendants rely on the decision of the Kansas Supreme Court in *Misco–United Supply, Inc. v. Richards of Rockford, Inc.,* 215 Kan. 849, 528 P.2d 1248 (1974). In *Misco–United,* the plaintiff was a Kansas corporation whose principal place of business was Wichita. The defendant, an Illinois corporation, had entered into three prior contracts with the plaintiff for the purchase of storage tank liners. In each prior contract, the defendant undertook to make payment to the plaintiff's Wichita office. In 1973, the defendant telephoned the plaintiff in Wichita and ordered additional tank liners. The plaintiff arranged for the manufacture and installation of the tank liners by contractors located outside Kansas. No manufacturing occurred in Kansas. The only contacts of the defendant to Kansas were its telephone call in which it placed the order, a subsequent invoice sent by the plaintiff from Wichita, and payments to be made in Kansas.

The Kansas Supreme Court held that long-arm jurisdiction could not be exercised over the defendant in a manner consistent with due process, since the contract was essentially performed outside of Kansas. Imposition of personal jurisdiction would therefore offend traditional notions of fair play and substantial justice. The plaintiff, the court stated, had acted merely "as a clearing-house for what was essentially an

out-of-state transaction." 215 Kan. at 854, 528 P.2d 1248.

*Misco United* has been distinguished in several Tenth Circuit decisions which have found sufficient state contacts by out-of-state buyers to uphold personal jurisdiction. In *Pedi Bares, Inc. v. P. & C. Food Markets, Inc.*, 567 F.2d 933 (10th Cir.1977), the court found that personal jurisdiction in Kansas existed over the defendant, a wholesale grocer serving independently owned grocery stores in New York and Pennsylvania. An agent of the plaintiff, a California corporation doing business in Kansas, had authority to solicit orders which would be sent to Kansas for acceptance. The defendant gave the agent a letter of introduction to the stores it serviced. The agent obtained orders from the stores, which were forwarded to Kansas. The plaintiff accepted the orders and shipped the required goods to the stores placing the orders. The goods had been manufactured in Kansas.

The Tenth Circuit found sufficient contacts with Kansas to fulfill due process requirements. The defendant had acted affirmatively in issuing the plaintiff's agent a letter of introduction. Stores serviced by the defendant had ordered the goods, which were manufactured in, and shipped from, Kansas. Finally, the defendant had sent partial payment for the shipped goods to the plaintiff in Kansas. 567 F.2d at 937.

In *Continental American Corp. v. Camera Controls Corp.*, 692 F.2d 1309 (10th Cir.1982), the Tenth Circuit again found sufficient contacts on the part of an out-of-state buyer. The buyer was a California corporation that had contracted with a Missouri Company for the manufacture and sale of balloons. The balloons were manufactured and shipped to California from the seller's factory in Ohio. Subsequently, the balloon company (including its accounts receivable) was sold to the plaintiff, a Kansas corporation with its principal place of business in Wichita.

The defendant was notified of the assignment of the account to the Kansas company. Subsequently it ordered additional balloons from the Kansas company, which sent invoices to the defendant specifying that payment was to be made in Kansas. The defendant made two partial payments on its account to the plaintiff in Kansas. The court found that these payments, along with others received in Wichita after the plaintiff brought suit, "provide circumstantial proof that the parties agreed some performance would be rendered in the forum state." 692 F.2d at 1312. Accordingly, the court found that long-arm jurisdiction was authorized under K.S.A. 60-308(b)(5).

The Tenth Circuit also found that the exercise of long-arm jurisdiction would not violate due process. Even though the goods were not manufactured in Kansas, the court found that the defendant purchaser had sufficient contacts with the state to satisfy constitutional requirements. The court found that, in the context of contemporary business practices, personal jurisdiction could be exercised on the basis of the defendant's contacts with Kansas. In the modern world, "commercial transactions often involve little contact with the forum beyond that of mail and telephone communications, [while] defending a suit in a foreign jurisdiction is not as burdensome as in the past." 692 F.2d at 1314 (citations omitted).

In reaching its conclusion that due process standards would not be offended by the exercise of personal jurisdiction, the court distinguished *Misco–United.*

> Unlike the situation in *Misco–United,* here part performance of the contract, *e.g.,* partial payments of the contractual amount, did take place in Kansas. *See, Standard Leasing Co. v. Performance Systems, Inc.,* 321 F.Supp. 977 (N.D.Tex. 1971). Unlike the unilateral activity of plaintiff in *Misco–United,* it can be fairly said that the defendant here availed itself of the privilege of business contacts with Kansas offices.

692 F.2d at 1314. *See also FDIC v. Culver,* 640 F.Supp. 725, 728 (D.Kan.1986) (execution of promissory note under which payments were to be sent to Kansas bank supported finding of personal jurisdiction).

**760**

Another relevant case is *Insulation Corp. of America v. Sportsplex, Inc.*, 716 F.Supp. 540 (D.Kan.1989). In *Insulation Corp.*, the defendant was a Nevada corporation whose principal place of business was in New Jersey. The plaintiff was a Kansas manufacturer and seller of insulation systems. The defendant, after receiving a brochure sent by the plaintiff, contacted the plaintiff by telephone and the parties entered into a oral contract for the delivery of specified insulation systems to New Jersey. No negotiations for the contract took place in Kansas. 716 F.Supp. at 541.

Judge O'Connor found that the defendant's contacts with Kansas were sufficient to subject the defendant to personal jurisdiction in Kansas. Citing the observation of the Tenth Circuit in *Continental American*, 692 F.2d at 1314, that contemporary commercial transactions are often limited to telephone or mail communications while the difficulties of defending a suit in a foreign state have diminished, the court found that the exercise of personal jurisdiction did not violate due process of law.

In the instant action, the defendants entered into a contract with [plaintiff] ICA, a Kansas corporation. In connection with the contract, the defendants made telephone calls to ICA in Kansas. Although they assert that they did not know the destination of their calls to the toll-free, "1–800" number, the assertion is not plausible in light of the fact that they had received literature with numerous indications that ICA was a Kansas corporation. Moreover, [ICA vice-president] Kessler told the defendants that ICA was located in Kansas. Additionally, at least part of the contract (ICA's design, fabrication, and partial assembly of the insulation system) was to be performed in Kansas. Again, the defendants should have been aware that the contract would be partially performed in Kansas because of Kessler's statements and the literature that they received. Given these facts, we find that asserting jurisdiction over the defendants is consistent with the principles of fourteenth amendment due process. They had minimum contacts with the state of Kansas, and these contacts were the result of and pursuant to their decision to enter into a contract with a Kansas corporation to be partially performed in Kansas.

716 F.Supp. at 543.

The situation in the present case is comparable. In *Insulation Corp.*, while the first contact between the parties arose as the result of the plaintiff's brochure, the contract itself was created at the initiative of the defendant. Here, although the first contact between the parties arose as the result of the action of the plaintiff's salesman, the parties did not reach any agreement. The contract arose later, at the initiative of the defendants, when O'Herron contacted Sills in June, 1989.

In addition to initiating the contract, the defendants were obviously aware that they were dealing with a Kansas company. The parties communicated by telephone, telefax, and mail. Part of the contract was to be performed in Kansas. The agreement required the plaintiff to submit invoices from Wichita, and required the defendant to send product orders and payments to Wichita. The corporate defendants reasonably should have anticipated that their conduct and connection with Kansas were such that they might be haled into court there. *Burger King*, 471 U.S. at 474, 105 S.Ct. at 2183.

*2. Jurisdiction over Doria.*

The court also has personal jurisdiction over defendant Doria. Marcus Food alleges detrimental reliance on Doria's alleged agreement to provide a personal guaranty of the Family Foods contract payments. In addition, Marcus Food alleges that Doria authorized two insufficient funds checks on behalf of two of the VRD entities.

According to the affidavits filed by the plaintiff, the agreement reached by Marcus Food and Family Foods in June, 1989 required both Doria and his wife to execute personal guaranties of Family Foods' payments. The guaranties also provided that payment for all invoices submitted by Mar-

cus Food would be paid within 14 days. As noted earlier, payments under the agreement were sent to Marcus Food in Wichita.

According to Sills' affidavit, O'Herron represented to him that Doria would execute the personal guaranty. On June 12, Jerry Marcus mailed a copy of the guaranty agreement to Doria. The guaranty agreement, however, was never signed or returned.

■ Personal jurisdiction over Doria can be supported under either K.S.A. 60–308(b)(5) or (b)(2). The personal guaranty at issue would require Doria to make payments to the plaintiff in Kansas. Doria denies agreeing to execute the guaranty (or authorizing O'Herron to indicate that he would agree). But, as noted earlier, in resolving the present matter all fact disputes must be resolved in favor of the plaintiff, and all factual inferences must be drawn in its favor. Here, the plaintiff has alleged that Doria encouraged the formation of the June agreement through his apparent consent to the personal guaranty, and that it was injured through its reliance on that representation. Under the facts of the case, as represented in the present pleadings and under the current standard of proof, long-arm jurisdiction is satisfied under K.S.A. 60–308(b)(5), as a contract to be performed in whole or in part in Kansas.

■ In addition, long-arm jurisdiction may be supported by K.S.A. 60–308(b)(2), which authorizes service of process against a person who commits a tortious act, wherever located, which results in an injury in Kansas. Here, Doria is alleged to have issued insufficient funds checks to the plaintiff on behalf of two of the VRD defendants. Doria argues that since the checks were signed only in his capacity as an officer of the defendants, he is shielded from liability under the doctrine of corporate officer immunity.

Doria's argument must be rejected. Whether or not Doria signed the checks in his official rather than personal capacity, he may nonetheless be personally liable if he "knew or should have known there were no funds in the bank" to pay the checks.

*Meehan v. Adams Enterprises, Inc.*, 211 Kan. 353, 355, 507 P.2d 849 (1973).

■ Finally, exercise of personal jurisdiction over Doria would not violate principles of due process. In addition to O'Herron's alleged representation that Doria would personally guarantee payments of sums due under the June agreement and the insufficient funds checks sent to Kansas by Doria, the record also contains a letter apparently sent by fax by Doria to Jerry Marcus. In the letter dated June 12, 1989, Doria told Marcus that he had "heard quite a bit about your company and I am looking forward to working with you." The letter identifies several financial references for Jedco National, Inc., the parent corporation of Family Foods. Enclosed with the letter were Jedco's most recent financial statements.

Viewing the record in the light most favorable to the plaintiff, it appears that Doria purposefully and voluntarily availed himself of the opportunity to do business in Kansas. Doria's contacts with Kansas are not the product of the unilateral actions of others, and represent sufficient contacts to warrant the exercise of personal jurisdiction consistent with traditional notions of fair play and substantial justice.

IT IS ACCORDINGLY ORDERED.