**GREEN COUNTRY CRUDE, INC., a Kansas Corporation, Plaintiff,**

v.

**AVANT PETROLEUM, INC., Defendant.**

### No. 86–1306–K.

United States District Court,
D. Kansas.

Dec. 3, 1986.

Andrea Ramsay and Walter C. Williamson, Williamson, McGee, Griggs & DeMoss, Chartered, Wichita, Kan., for plaintiff.

William R. Sampson and Trisha A. Thelen, Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., Patterson, Belknap, Webb & Tyler, New York City, for defendant.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

In this diversity action plaintiff seeks to recover damages for defendant's alleged breach of a contract for the purchase of oil. Defendant has moved to dismiss contending, first, the court lacks *in personam* jurisdiction, and second, service of process was inadequate; alternatively, defendant seeks transfer of this case under 28 U.S.C. § 1404(a). Following review of the parties' briefs and oral argument, the court agrees it lacks personal jurisdiction over the defendant.

Questions of personal jurisdiction necessarily require a detailed examination of the facts of each case. Plaintiff Green Country Crude, Inc. ("Green Country") is a Kansas corporation, with its principal place of business in Coffeyville, Kansas. Defendant Avant Petroleum, Inc. ("Avant") is a New York corporation, qualified to do business in Texas with its principal place of business, in that state, in Houston. Avant is not qualified to do business in Kansas, and has no employees, facilities or bank accounts located in this state.

Representatives of these two companies first met during the fall of 1985 at a meeting in Dallas, Texas. Charles Hicks, president of Green Country, was invited to this meeting by a third party. There he met and spoke with Donald Wray, an Avant manager from that company's Houston office. In his affidavit to the court, Hicks states:

On or about October 20, 1985, during the first meeting which I had with Don Wray in Dallas, Texas, and prior to the execution of the contract, I informed Mr. Wray that in order for Green Country ... to provide oil and perform under a contract with Avant it would be necessary to purchase oil in Kansas. Mr. Wray stated that was okay, that he did not care where the barrels came from as long as it was marketable crude. He further encouraged me on behalf of Green Country ... to enter into such contracts in Kansas to supply oil to Avant.

(Rec. p. 10, ¶ 5.) No formal contract was entered at this meeting, but after Hicks returned to Kansas he telephoned Wray at his Houston office, and they continued their discussions. In Houston, Wray then drafted and signed, on Avant's behalf, a contract for the purchase of oil from Green Country. Wray mailed the contract to Green Country's offices in Coffeyville, Kansas, where Hicks signed the contract on November 22, 1985, and returned a duplicate original to Avant's offices in Houston. At no time did any Avant agent or representative physically enter the State of Kansas to negotiate or formalize this contract.

The contract designated Green Country as the seller, and Avant as the buyer, of approximately 240 barrels of "Domestic Sweet (West Texas Intermediate quality)" crude oil per day. Green Country was required to deliver the oil into the Arco pipeline facilities at Manuel, Oklahoma. The term of the contract began December 1, 1985, and continued on a monthly basis until and unless terminated upon 30 days' notice by either party. Price was to be calculated according to the daily average of light sweet crude oil prices on the New York Mercantile Exchange for each month in question, and Avant made weekly payments to the account designated by Green Country. The agreement incorporated by express reference the additional terms and conditions of Avant's standard provisions for domestic transactions, one of which stated that the laws of the State of Texas governed the agreement and any related disputes.

After the contract was signed by both parties, Dean Elliott, an Avant consultant, met with Hicks in Tulsa, Oklahoma to inspect Green Country's facilities there. Hicks later traveled to Houston and again met with Don Wray, but there were apparently no further personal contacts. During the performance of the contract Avant representatives communicated with Hicks in Coffeyville, Kansas, by telephone and mail. Plaintiff alleges Avant agents also contacted Arco at its offices in Independence, Kan-

sas, with instructions and payments regarding the pipeline operation in Oklahoma, but it is clear that none of these contacts, nor any contacts with Green Country involved physical visits to Kansas by Avant personnel. Green Country's invoices were transmitted from its Coffeyville, Kansas office to Avant, and Avant made payments to plaintiff's account at the Fourth National Bank in Tulsa, Oklahoma.

On February 26, 1986, the parties amended the contract to provide for Avant's purchase of up to 500 barrels of oil per day; on March 3, 1986, the contract was further amended, providing for the purchase of up to 700 barrels per day. Three days later, on March 6, a final amendment required 45, rather than 30, days' written notice by either party to effect cancellation of the contract. Each of these amendments originated in Avant's Houston office and was sent to Green Country in Coffeyville, Kansas.

Less than one week later, on March 12, 1986, defendant Avant allegedly refused to accept any further deliveries of oil, without giving Green Country the 45 days' written notice of cancellation required by the amended contract. Plaintiff filed this suit, seeking recovery for defendant's breach, on April 9, 1986.

In a diversity action such as this, the court must look to the law of the forum state for the basis of *in personam* jurisdiction over the nonresident defendant. *Doyn Aircraft, Inc. v. Wylie*, 443 F.2d 579 (10th Cir.1971); *NL Industries, Inc. v. Gulf & Western Industries, Inc.*, No. 85–6039 (D.Kan., *unpub.* Aug. 7, 1986). Plaintiff bears the burden of establishing personal jurisdiction over the nonresident defendant and must make a prima facie showing jurisdiction exists to avoid dismissal. *Behagen v. Amateur Basketball Assoc. of U.S.A.*, 744 F.2d 731 (10th Cir.1984). Factual doubts are to be resolved in plaintiff's favor. *Ammon v. Kaplow*, 468 F.Supp. 1304 (D.Kan.1979).

In addressing the question of jurisdiction we must first determine whether defendant's conduct falls within the scope of any of the enumerated provisions of the Kansas long arm statute, K.S.A. 60–308(b), authorizing service of process on nonresident defendants. We must then analyze whether this conduct satisfies the "minimum contacts" requirements of constitutional due process. *Federal Deposit Ins. Corp. v. Culver*, 640 F.Supp. 725, 727 (D.Kan.1986); *Thermal Insulation Systems, Inc. v. Ark-Seal Corp.*, 508 F.Supp. 434, 436 (D.Kan. 1980); and *J.E.M. Corp. v. McClellan*, 462 F.Supp. 1246, 1247 (D.Kan.1978). Both the statutory and constitutional requirements must be satisfied before this court can properly exercise jurisdiction over a nonresident defendant. A motion to dismiss may be granted for lack of personal jurisdiction on either basis alone. Cases must be carefully distinguished on the basis of statutory holdings that find a defendant not within the literal terms of the statute or rule that authorizes service, and constitutional holdings that find the exercise of jurisdiction, once properly invoked by statute or rule, inconsistent with due process standards. *J.E.M. Corp. v. McClellan*, 462 F.Supp. at 1247.

Plaintiff argues defendant Avant's conduct falls within either, or both, the "transacting business" or "express or implied contract" provisions of the Kansas long arm statute, K.S.A. 60–308(b), which thus provides:

Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person and, if an individual, the individual's personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts:

(1) Transaction of any business within this state;

\*    \*    \*    \*    \*    \*

(5) entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state; ....

This statute reflects the Kansas public policy of asserting personal jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment. *Misco-United Supply, Inc. v. Richards of Rockford, Inc.*, 215 Kan. 849, 528 P.2d 1248 (1974); *Woodring v. Hall*, 200 Kan. 597, 606, 438 P.2d 135 (1968). Where a statute extends state court jurisdiction to the constitutionally permissible limits, the "only" concern of a court addressing a jurisdictional challenge is whether minimum contacts exist so that maintenance of the suit does not offend due process. *Shanks v. Westland Equipment and Parts Co.*, 668 F.2d 1165 (10th Cir.1982). Thus, consistent with the Kansas Supreme Court's interpretation of K.S.A. 60–308(b), the primary restraint on the exercise of jurisdiction is the limits found in the due process clause of the Fourteenth Amendment as interpreted in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), and their progeny. *Intern. Pizza Hut, etc. v. Supreme Pizza, Inc.*, 464 F.Supp. 65, 67 (D.Kan.1978).

While courts must be careful to avoid burdening the Kansas Legislature with narrowing constructions of the long arm statute which may in turn require curative enactments, the axiom of liberal construction does not mean we may ignore the enumerated acts. Only under the circumstances embraced by the provisions of K.S.A. 60–308(b) may service issue and the constitutionality of jurisdiction under any set of facts be tested. *J.E.M. Corp. v. McClellan*, 462 F.Supp. 1246, 1251 (D.Kan. 1978). Both the federal and state courts of Kansas continue to find the exercise of jurisdiction improper where plaintiff fails to establish defendant's conduct meets the statutory criteria. *See Misco Leasing, Inc. v. Vaughn*, 450 F.2d 257 (10th Cir.1971); *Carney v. Gordon*, No. 86–1029 (D.Kan., unpub. Sept. 17, 1986); *Dirks v. Carnival Cruise Lines*, 642 F.Supp. 971 (D.Kan. 1986); *Koch Industries, Inc. v. Department of Energy*, No. 79–1338 (D.Kan., un-pub. Oct. 22, 1980); *Schlatter v. Mo-Comm Futures, Ltd.*, 233 Kan. 324, 662 P.2d 553 (1983); and *Misco-United Supply, Inc. v. Richards of Rockford, Inc.*, 215 Kan. 849, 528 P.2d 1248 (1974).

"In a broad sense, 'business' is transacted within this state when an individual is within or enters this state in person or by agent and, through dealing with another within this state, effectuates or attempts to effectuate a purpose to improve his economic conditions, and satisfy his desires." *Woodring v. Hall*, 200 Kan. 597, Syl. ¶ 8, 438 P.2d 135 (1968). Before jurisdiction may properly be asserted over a nonresident under the K.S.A. 60–308(b)(1) "transacting business" provision, three factors must coincide:

(1) the nonresident must purposefully do some act or consummate some transaction [in Kansas]; (2) the claim for relief must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice....

*White v. Goldthwaite*, 204 Kan. 83, 88, 460 P.2d 578 (1969). But there are no talismanic jurisdictional formulas, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), and the *Woodring/Goldthwaite* "economic condition" theory is not a talismanic formula for asserting jurisdiction under K.S.A. 60–308(b)(1) because its literal application would effectively eliminate any question of personal jurisdiction, *Carney v. Gordon*, No. 86–1029, slip op. at 6 (D.Kan., unpub. Sept. 17, 1986). A defendant need not have been physically present in Kansas to be found to have transacted business here for purposes of (b)(1). *Thermal Insulation Systems, Inc. v. Ark-Seal Corp.*, 508 F.Supp. 434, 442 (D.Kan.1980); *Schlatter v. Mo-Comm Futures, Ltd.*, 233 Kan. 324, 334, 662 P.2d 553 (1983). But the question of physical presence remains a factor in determining jurisdiction under the Kansas long arm statute. *Thermal Insulation Systems*, 508 F.Supp. at 442. And it is "patently erroneous" to predicate jurisdic-

tion under (b)(1) on a nonresident defendant's activities in Kansas unrelated to the transaction giving rise to plaintiff's claim for relief; "[t]he statute specifically requires that the transaction of business ... must be in connection with the cause of action." *Schlatter v. Mo-Comm Futures, Ltd.*, 233 Kan. at 334.

In the present case we deal with a contract for the purchase of oil by Avant from Green Country. Judge Brown's earlier comments concerning a purchase contract such as this merit consideration:

> [W]hile a buyer is frequently successful in asserting jurisdiction in his forum, in suits against his vendor [on the basis of transacting business]—the *seller* is not so successful in invoking his jurisdiction in suits against his customer. In each case in which the customer has been held to the jurisdiction of his vendor's forum, it appears that the buyer had some significant contact with the forum state through personal visits to inspect the merchandise, to take delivery, or by execution of the necessary documents *within the forum.* ... [M]ere contact by mail or phone is not sufficient contact with the forum. ...

*Oswalt Industries, Inc. v. Gilmore,* 297 F.Supp. 307, 312–13 (D.Kan.1969) (citations omitted; emphasis both added and in original). Judge Brown noted the Kansas long arm statute, adopted from the corresponding Illinois statute with few minor changes, carries with it the construction of the latter by the Illinois courts, which hold that under the "transacting business" provision " 'a nonresident purchaser from an Illinois vendor, without other contact with Illinois, is not by reason of [the payment device] subjected to jurisdiction of the Illinois courts and thus made amenable to extra-territorial service of process.' " *Oswalt Industries,* 297 F.Supp. at 313 n. 8, quoting *Purdy Co. v. Argentina,* 333 F.2d 95, 98 (7th Cir. 1964), *cert. denied* 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965). In *Oswalt,* defendant placed orders for farm equipment, in Georgia, with the Kansas plaintiff's salesmen who approached Gilmore for the purpose of furthering plaintiff's economic condition; the goods were delivered in Georgia; defendant's one personal visit to Kansas to inspect plaintiff's plant was initiated by plaintiff; there were telephone negotiations between the two parties; and defendant had even returned some of the merchandise to plaintiff in Kansas for "credit and/or resale." The court determined defendant was not transacting business in Kansas sufficient to meet the requirements of K.S.A. 60–308(b)(1), and dismissed the case for lack of personal jurisdiction. *Oswalt Industries, id.* at 313. *See also Misco Leasing, Inc. v. Vaughn,* 450 F.2d 257 (10th Cir.1971) (no transaction of business in Kansas for purposes of (b)(1) where Oklahoma resident executed a guarantee of payment contract in Oklahoma, in connection with payments required by an Oklahoma lessee of equipment leased by Kansas lessor, even though lease provisions expressly invoked Kansas law as governing law, and lease rentals payable in Kansas); *Carney v. Gordon,* No. 86–1029 (D.Kan., *unpub.* Sept. 16, 1986) (no transaction of business where no evidence defendant was soliciting business in Kansas; contract at issue not for sale of goods or services to be brought within Kansas, but for rental of real estate located in another jurisdiction; defendant initially contacted by plaintiff; defendant's subsequent communications into Kansas were only in response to that initial contact; and defendant never traveled to Kansas, employed agents, or otherwise engaged in business here); and *Stonecipher v. Sexton,* 54 F.R.D. 435, 440 (D.Kan.1972) (no personal jurisdiction under (b)(1) where only contacts were telephone calls from Kansas initiated by plaintiff and defendant's subsequent physical appearance in this state, after the act occurred outside the state giving rise to plaintiff's claim; "no substantial connection with Kansas in the sense of transacting business here.").

A short review of the decisions upholding statutory jurisdiction under K.S.A. 60–308(b)(1) reveals each involved a greater degree of contacts, connections or activity by the nonresident within the State of Kan-

sas than exists in the present case. *See Doyn Aircraft, Inc. v. Wylie,* 443 F.2d 579 (10th Cir.1971) (defendant executed distributorship agreement in Texas with Kansas corporation; agreement governed by Texas law; defendant traveled into Kansas, during which visit parties renegotiated and reaffirmed contract); *Inter-Collegiate Press, Inc. v. Myers,* 519 F.Supp. 765 (D.Kan.1981) (action for breach of employment contract; defendant engaged in extensive business dealings within Kansas for both parties' benefit, including training, meetings, telephone and mail communications, receipt of supplies and commissions from plaintiff's Kansas home office); *Grimandi v. Beech Aircraft Corp.,* 512 F.Supp. 764 (D.Kan.1981) (defendant sent agents into Kansas to solicit sales, which were successful; goods were shipped into Kansas by defendant even though delivered outside state borders); *Energy Reserves Group v. Superior Oil Co.,* 460 F.Supp. 483 (D.Kan.1978) (defendant traveled into Kansas and conducted extensive negotiations here with the Kansas plaintiffs, resulting in the contract at issue); *Woodring v. Hall,* 200 Kan. 597, 438 P.2d 135 (1968) (cause of action arose out of a contract entered into by defendant within State of Kansas and which was to be performed wholly within the state); *Odam v. Arthur Murray, Inc.,* 5 Kan.App.2d 612, 621 P.2d 453 (1980) (defendant personally solicited plaintiff and engaged in regular business efforts to attract other Kansas residents as customers; defendant had a history of carrying on business with Kansas residents, with foreseeable consequences by doing so in the greater Kansas City metropolitan area); *Davis v. Grace,* 4 Kan.App.2d 704, 610 P.2d 1140 (1980) (even though plaintiff initiated contract in dispute, facts defendant required to perform substantial part of contract in Kansas, that defendant carried on similar business transactions with other Kansas residents, that complaints arising therefrom were completely foreseeable, and that defendant obtained substantial economic gain from his Kansas transactions, sufficient); [a decision open to some question in light of

later holding in *Schlatter v. Mo-Comm Futures, Ltd.,* 233 Kan. 324, 334, 662 P.2d 553 (1983), that it is "patently erroneous" to predicate (b)(1) jurisdiction on a nonresident defendant's other business activities in Kansas not connected in any way with the transaction giving rise to plaintiff's claim]; *Rosedale State Bank & Trust Co. v. Stringer,* 2 Kan.App.2d 331, 579 P.2d 158 (1978) (defendant executed renewal note in Missouri; given to induce plaintiff Kansas bank to forego calling underlying promissory note; agreement was accepted and was to have been *paid* in Kansas, with substantial effect in this state); and *Prather v. Olson,* 1 Kan.App.2d 142, 562 P.2d 142 (1977) (defendant's solicitation by mail or by agents within the forum, for services to be performed in another state, may be sufficient transaction of business for purposes of (b)(1)).

Weighing the facts of the present case, we cannot find Green Country has made the prima facie showing Avant was transacting business in Kansas necessary to support the assertion of jurisdiction under K.S.A. 60–308(b)(1). Limiting our inquiry to defendant's contacts, conduct and activities within Kansas giving rise to plaintiff's cause of action, and resolving all doubts in plaintiff's favor, we are left with the facts the purchase contract and amendments were delivered to, and accepted by, Green Country at its offices in Kansas; and from its Houston offices, Avant communicated with Green Country in Kansas by telephone and mail. But the negotiations were initiated, and the contract solicited, by plaintiff in Texas. Defendant drafted the contract and amendments, and accepted them, in Texas. The laws of Texas, not Kansas, govern the agreement and all related disputes. Defendant's entire performance of its contractual obligations, including acceptance of the oil and payment to Green Country, took place in Oklahoma, not Kansas. Avant never physically entered Kansas; all personal contact between its agents and those of Green Country occurred in Texas and Oklahoma. The telephone and mail communications with plain-

tiff in Kansas are no more than would be expected with any purchase contract, and they were made only in response to the contract solicited by plaintiff. Avant is not qualified to do business in Kansas, and maintains no facilities, employees or bank accounts in this state. To find Avant was "transacting business" in Kansas would extend the *Woodring/Goldthwaite* "economic condition" theory beyond the point of tolerance, negating any question of personal jurisdiction over a nonresident defendant who simply enters a purchase contract with a Kansas plaintiff. K.S.A. 60–308(b)(1) does not reach this far.

Subsection (b)(5) of the long arm statute was added by the legislature to broaden the scope of the statute, extending service in contract cases where a nonresident may have committed a breach without ever setting foot in Kansas. *J.E.M. Corp. v. McClellan,* 462 F.Supp. 1246, 1252 (D.Kan. 1978); *Rosedale State Bank & Trust Co. v. Stringer,* 2 Kan.App.2d 331, 333, 579 P.2d 158 (1978). This subsection, a common element of many states' long arm statutes, is often referred to as the "single act" statute because it permits the exercise of jurisdiction over a nonresident solely on the basis of making or performing a single contract within the forum state. *Pedi Bares, Inc. v. P & C Food Markets, Inc.,* 567 F.2d 933, 935 (10th Cir.1977). Because (b)(5) was intended to broaden the (b)(1) "transacting business" provision, the three basic factors for jurisdiction under either provision are the same: (1) a purposeful act, or transaction consummated, by the nonresident in the forum state; (2) a claim for relief which arises from, or is connected with, such act or transaction; and (3) satisfaction of due process considerations. *Continental American Corp. v. Camera Controls Corp.,* 692 F.2d 1309, 1312 (10th Cir.1982), quoting *Prather v. Olson,* 1 Kan. App.2d 142, 562 P.2d 142 (1977).

Under subsection (b)(5) our analysis focuses on the contract. "Regardless of the purpose of the contract, the requirements of subsection (5) are satisfied if the contract is 'to be performed in whole or in part by either party in this state.'" *Carrothers*

*Const. Co. v. Quality Service & Supply,* 586 F.Supp. 134, 137 (D.Kan.1984). Nothing in the contract at issue required Avant to perform any of its obligations in Kansas. For this court to assert jurisdiction over Avant, it must find, then, the contract was to be performed in whole or in part by Green Country in this state.

The court rejects plaintiff's contention that its purchase of oil in Kansas, for delivery in Oklahoma in satisfaction of the contract, constitutes performance of that contract in this state sufficient to meet K.S.A. 60–308(b)(5). "Performance of a contract" is the timely execution of the acts required by the agreement, at the location and in the manner stipulated. 17 Am.Jur.2d *Contracts* § 355. The contract at issue required Green Country to *deliver* the various quantities of "Domestic Sweet (West Texas Intermediate quality)" oil to the Arco pipeline facilities in Manuel, Oklahoma. Those acts were plaintiff's performance of the contract. Avant did not specify Kansas oil in the contract; even Green Country's president recognizes Avant "did not care where the barrels came from as long as it was marketable crude." Nor, apparently, did Green Country feel Kansas oil was the essence, or even a material part, of the contract; the company accepted the agreement as written by Avant, without any request that the quality provision be changed to reflect that Kansas oil was to be used. Even though Avant representatives may have known Green Country would seek Kansas oil to fill the purchase contract, plaintiff's acquisition of oil in Kansas was neither full nor part performance of the agreement in this state as required by 60–308(b)(5). That activity by plaintiff was not anticipated or required by the contract itself. At best, under these facts plaintiff's purchases of Kansas oil were unilateral activities *in preparation for* performance of the contract which, significantly, occurred in Oklahoma.

The court's support for this conclusion is not only the literal language of K.S.A. 60–308(b)(5).

A single contract [formed by mail, telephone or out of state negotiations] under which an out-of-state buyer agrees to purchase goods to be shipped from the forum state ... has in the great majority of cases been held insufficient to support long-arm jurisdiction over the buyer. The long-arm statute provisions most commonly invoked in these sale cases— "transaction of business" and those provisions speaking of "entering into a contract to be performed in whole or in part in the state"—would seem to apply to purchasers as well as sellers, but in weighing the factors relevant to due process, a distinction may be warranted between buyers and sellers otherwise similarly situated. Some courts have declared such a distinction: A single sale contract may be sufficient for long-arm jurisdiction over a non-resident seller, but not over a buyer.

Casad, *Jurisdiction in Civil Actions* ¶ 8.01[2][b] (1983) (footnotes omitted). In contract cases such as the present one, where plaintiff is not a manufacturer and the negotiations occurred outside the forum state or by mail or telephone, Professor Casad notes:

Where the contract on which the non-manufacturer seller sues was formed without any physical conduct in the forum state by defendant, the cases are difficult to fit into regular patterns. In most of the cases in which *the goods were to be transferred to the purchaser in or FOB the forum state*, long-arm jurisdiction was upheld, even though there was no actual physical entry by the defendant into the forum state in the negotiations leading to the contract's formation. In most of the cases upholding jurisdiction, however, the defendant had other relevant forum contacts and so *there is no certainty that delivery in the state alone would have supported jurisdiction.* ...

Where the goods were to be *delivered outside the forum state* and there were no prior or ongoing transactions between the parties, a majority of cases have *de-nied* long-arm jurisdiction over the purchaser. . . .

Casad, *id.* ¶ 8.01[2][b][i] (emphasis added; footnotes omitted).

To the extent some of the cases Professor Casad relies on in his comments are based on due process considerations, a short due process analysis will be presented although the court remains convinced statutory jurisdiction is absent in this case.

To withstand due process scrutiny, the exercise of *in personam* jurisdiction requires a nonresident defendant have certain minimum contacts with the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. The quantity of defendant's contacts is unimportant. The focus, rather, is on "the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 319, 66 S.Ct. 154, 158, 159, 90 L.Ed. 95 (1945). Application of the "minimum contacts" rule varies with the quality and nature of defendant's activity, but in each case it is essential that there be some act by which defendant purposefully avails itself of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of its laws. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). It must be "reasonably foreseeable" that defendant could be required to defend an action in the forum. *Pedi Bares, Inc.,* 567 F.2d at 937. The foreseeability that is critical to due process is not that of causing injury in the forum state, but the foreseeability that defendant's " 'conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there.' " *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528, 542 (1985), quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). And although defendant's physical presence in the forum state is not required for the assertion of jurisdiction, in defining the circumstances under which a

potential defendant should reasonably anticipate out-of-state litigation, " '[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state.' " *Burger King,* 471 U.S. at 474, 476, 105 S.Ct. at 2182, 2183, 85 L.Ed.2d at 542, 543, quoting *Hanson v. Denckla,* 357 U.S. at 253, 78 S.Ct. at 1239.

Even this brief summary of due process principles requires this court to deny jurisdiction over defendant Avant. An individual's contract with an out of state party alone clearly does not automatically establish sufficient minimum contacts in the other party's home forum supporting personal jurisdiction. *Burger King,* 471 U.S. at 477, 478, 105 S.Ct. at 2184–85, 85 L.Ed.2d at 544–45. The mere negotiation of a sales transaction, or placement of an order for goods, over the telephone with persons residing in Kansas does not invoke the benefits and protections of the laws of this state. *Misco-United Supply, Inc. v. Richards of Rockford, Inc.,* 215 Kan. 849, 854, 528 P.2d 1248 (1974). The purchase contract at issue in that case was initiated by the nonresident defendant in Kansas, and required payment at plaintiff's Wichita offices. *Misco-United Supply, Inc.,* 215 Kan. at 850, 528 P.2d 1248. In the present case, Avant did not engage in even those types of contacts. Further, the fact Avant representatives never physically entered Kansas in connection with this contract is a relevant, but not controlling, factor in this decision.

> The presence or absence of the defendant ... are relevant to jurisdictional questions—not because of any antiquated idea that physical presence is a jurisdictional prerequisite imposed by the limits of state sovereignty. They are relevant because they provide a clue to the significance attached by the defendant to the activities occurring within the forum state—and thus a clue as to his expectations.

*In-Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220, 235 (6th Cir.1972). Finally, Avant's invocation of *Texas* law as governing the contract and any related disputes is also relevant.

> [C]hoice-of-law *analysis* —which focuses on all elements of a transaction, and not simply on the defendant's conduct—is distinct from minimum-contacts jurisdictional analysis—which focuses at the threshold solely on the defendant's purposeful connection to the forum. Nothing in our cases, however, suggests that a choice-of-law *provision* should be ignored in considering whether a defendant has "purposefully invoked the benefits and protections of a State's laws" for jurisdictional purposes.

*Burger King,* 471 U.S. at 481, 105 S.Ct. at 2187, 85 L.Ed.2d at 547 (footnote omitted; emphasis in original). In *Burger King,* a Florida choice-of-law provision in a contract accepted by the nonresident defendant was found, in combination with other contacts, to reinforce the defendant's deliberate affiliation with Florida, purposeful availment of the benefits and protections of Florida's laws, and the possibility of litigation there, sufficient to support exercise of personal jurisdiction. *Id.* In the present case, however, Avant's invocation of *Texas* law combined with the *absence* of other minimal contacts with Kansas reinforces defendant's effective, if not deliberate, *avoidance* of any availment of the benefits or protections of the laws of Kansas.

In these circumstances, the court can only conclude the exercise of personal jurisdiction over Avant would violate the principles of due process. Green Country's decision to purchase oil in Kansas, *in preparation for* performance of its contractual obligations in Oklahoma, was not required by or made a material element of the contract. It was unilateral activity of the type insufficient to satisfy the requirement *defendant* have certain contacts with Kansas to support the exercise of personal jurisdiction.

No basis exists for jurisdiction over Avant under either K.S.A. 60–308(b) or the due process clause of the Fourteenth Amendment. In light of this holding there is no need to address the adequacy of the service of process on defendant.

IT IS ACCORDINGLY ORDERED this 3 day of December, 1986, defendant Avant

Petroleum, Inc.'s motion to dismiss for lack of personal jurisdiction is granted. The case is dismissed without prejudice.