**FIDELITY STATE BANK AND TRUST COMPANY, Dodge City, Kansas, Plaintiff,**

v.

**MERRILL LYNCH, PIERCE, FENNER, & SMITH, INC.; John G. Henderson; Moody's Investors Service, Inc.; and Standard & Poor's Corp., Defendants.**

No. 91–1068–K.

United States District Court, D. Kansas.

June 7, 1991.

Max E. Estes, William, Strobel, Estes, Malone & Mason, Dodge City, Kan., for plaintiff.

P.O. Konrad Knake, White & Case, New York City, James A. Walker, Triplett, Woolf & Garretson, Wichita, Kan., for defendants.

### MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

This matter is before the court on defendant Moody's Investors Service, Inc.'s motion to dismiss pursuant to Fed.R.Civ.P. 12(b). Moody's asserts this court does not have personal jurisdiction over it because no provision of the Kansas long arm statute applies to the facts of this case, and the exercise of personal jurisdiction over Moody's in this case would be contrary to the due process clause of the United States Constitution. In response, plaintiff Fidelity State Bank and Trust Company contends that this court does have personal jurisdiction over Moody's because Moody's regularly does business in Kansas and its negli-

gent act in this case had foreseeable consequences in Kansas.

This matter came before the court for hearing on May 31, 1991. After listening to the parties' oral arguments, the court noted that this case presents a novel question in the personal jurisdiction context since research had not revealed any direct authority for the present factual situation. The court also noted that it was reserving any findings until it had time to reexamine the issues presented by this case. Now, having fully reviewed the arguments made by the parties in their pleadings and at oral arguments, the court is ready to issue formal findings in this matter. As set forth more fully herein, the court finds that Moody's motion to dismiss should be denied.

The general rule is that the plaintiff bears the burden of establishing personal jurisdiction over the defendant. *Behagen v. Amateur Basketball Ass'n of the United States*, 744 F.2d 731, 733 (10th Cir. 1984). When a motion to dismiss for lack of personal jurisdiction is submitted prior to trial and is based on affidavits and other written material, plaintiff need only make out a *prima facie* showing of personal jurisdiction. *Id.* Any uncontroverted allegations in the complaint must be taken as true and any conflicting factual disputes are resolved in favor of the plaintiff. *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415 (10th Cir.1988); *Ammon v. Kaplow*, 468 F.Supp. 1304 (D.Kan.1979).

Moody's is a Delaware corporation with its principal place of business in New York City, New York. (Baldwin Aff., ¶ 1, filed Jun. 11, 1990.) Moody's is not registered to do business in Kansas and does not own or lease real estate in Kansas. In addition, Moody's does not pay any business taxes in Kansas, and has not maintained an office, bank account, phone number, or any employees in Kansas. (*Id.* at ¶ 3.)

Moody's is in the business of collecting information on securities issuers and analyzing the information and issuing opinions as to the credit worthiness of different types of securities. These opinions are then transformed into the form of ratings which are published in various Moody's guides and manuals. Moody's sells and distributes its publications in print form and in on-line computer services to various banks, financial institutions, libraries and other corporations. Some of these services are sold and distributed to paying subscribers located in the state of Kansas. (Zimmerman Aff., ¶¶ 5 & 7, filed Feb. 19, 1991.)

Furthermore, at the request of public or private entities, Moody's has issued ratings regarding Kansas entities which have been published in one or more of Moody's publications and distributed throughout the United States, including Kansas. In addition, Moody's has periodically mailed to Fidelity State Bank without solicitation or payment its Short Term Market Record Report which is published on a quarterly basis. (Zimmerman Aff., ¶¶ 6 & 7.)

In or around July, 1988, Colorado–Ute Electric Corporation engaged Moody's to assign a private placement rating to a proposed commercial paper note offering by its subsidiary, Colorado–Ute Financial Services Corporation.[1] The maximum face amount of the outstanding notes was to be $25,000,000.00 at any one time, and Colorado–Ute was to guarantee repayment. Colorado–Ute is a Colorado corporation with its principal place of business in Colorado. (Baldwin Aff., ¶ 7.)

After reviewing materials submitted by Colorado–Ute, and in response to a request by Colorado–Ute for a private placement rating for its proposed $25,000,000.00 commercial paper note offering, Moody's sent a letter dated July 27, 1988 to Colorado–Ute and to Colorado–Ute's investment adviser, Merrill Lynch Money Markets, Inc. in New York. (Pltf.'s Supp. Brief, Ex. A.) In relevant part that letter states that:

This review has been undertaken in accordance with Moody's policy of making available a rating appraisal on a prospective issue, subject to certain condi-

---

1. Since the parties make no material distinction for purposes of the present motion between Colorado–Ute Electric Corporation and Colorado–Ute Financial Services Corporation, the court will hereinafter collectively refer to those corporations as Colorado–Ute.

tions and for a fee, indicated on a strictly confidential basis. Such ratings do not appear in any of Moody's publications and the rating classification to be indicated will be applicable to an actual financing of similar structure of a period of one year, subject to revision or withdrawal by Moody's at any time, without notice.

Based on our analysis and review, *Moody's Rating Committee has assigned a rating of Prime–1 to Colorado–Ute Financial Service Corporation's proposed private placement of a commercial paper note issue,* subject to receipt of final documentation. *This letter, in its entirety, may be shown to prospective purchasers.*

If we may be of further assistance to you in this matter, please do not hesitate to contact us.

(*Id.* (emphasis added).)

This letter makes clear that Moody's issued a P–1 rating in regard to the notes issued by Colorado–Ute. A P–1 rating indicates that the notes had superior capacity of short-term promissory obligations. (Zimmerman Aff., ¶ 3.) Furthermore, although this rating by Moody's was not published in any of its publications, there is express permission to use the letter in regard to prospective purchasers, and Moody's sent a copy of this letter to Merrill Lynch. As a result, Moody's had reason to know that its rating would be communicated to a number of investors who would reasonably and foreseeably rely on the rating in deciding whether to purchase the notes.

In addition, since the size of the offering was relatively large, $25,000,000.00, and the company offering the notes was in a state adjacent to Kansas, it was reasonably foreseeable that Kansas investors would be approached about purchasing the notes. Moreover, Fidelity State Bank's allegation in its petition, that Moody's failed to exercise reasonable care or competence in obtaining necessary information to issue the P–1 rating and that such rating negligently misrepresented the risk associated the notes issued by Colorado–Ute (Petition,

¶ 79), must be assumed as true for purposes of this motion.

Plaintiff originally filed this claim in the District Court of Ford County, Kansas, Case No. 90 C 75. After defendants Merrill Lynch, Pierce, Fenner & Smith, Inc. and John G. Henderson reached a settlement agreement with the plaintiff, the district court below entered an order dismissing those defendants from the case. Soon thereafter, Moody's filed a notice of removal alleging that there was now complete diversity between the parties since plaintiff was a resident of Kansas and the remaining defendants were incorporated pursuant to the laws of states other than Kansas with their principal places of business in the State of New York. (Notice of Removal, Dkt. No. 1.) No issue as to the propriety of the removal has been raised.

### Conclusions of Law

■ The exercise of personal jurisdiction under the Kansas long arm statute requires both a showing that the case falls within the statutory parameters of K.S.A. 60–308(b) and that the exercise of jurisdiction does not violate the due process clause of the Fourteenth Amendment to the United States Constitution. *Green Country Crude, Inc. v. Avant Petroleum, Inc.,* 648 F.Supp. 1443, 1445 (D.Kan.1986). The plaintiff must satisfy both requirements by a *prima facie* showing before the court may exercise jurisdiction. *Behagen v. Amateur Basketball Assoc. of U.S.A.,* 744 F.2d 731 (10th Cir.1984).

■ The parts of the Kansas long arm statute at issue are the following:

(b) *Submitting to Jurisdiction—process.* Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person ... to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts:

(1) Transaction of any business within this state;

(2) commission of a tortious act within this state;

K.S.A. 60–308(b)(1), (2) (1989 Supp.)

In its initial brief, Moody's devotes much space to arguing that this case does not fall under K.S.A. 60–308(b)(1). In response thereto, plaintiff does rely in part on (b)(1) but plaintiff primarily relies on K.S.A. 60–308(b)(2).

Plaintiff's claim against Moody's essentially sounds in tort, not in contract. Furthermore, since the court hereinafter finds that K.S.A. 60–308(b)(2) does apply to this case, comment on K.S.A. 60–308(b)(1) is unnecessary.

The Kansas Supreme Court has said that the Kansas long arm statute is to be liberally construed to assert personal jurisdiction over nonresident defendants to the full extent permitted by due process. *Volt Delta Resources, Inc. v. Devine*, 241 Kan. 775, 777, 740 P.2d 1089 (1987). Furthermore, that court has said, in regard to K.S.A. 60–308(b)(2), that a nonresident defendant commits a "tortious act within the state" even when the tortious conduct occurs outside of the state, "so long as the injury resulting from the tortious act occurs in the state." *Id.* at 778, 740 P.2d 1089 (citing *Ling v. Jan's Liquors*, 237 Kan. 629, 633, 703 P.2d 731 (1985)).

As the court has already said, it is taken as established for purposes of this motion that Moody's failed to exercise reasonable care or competence in obtaining necessary information to issue the P–1 rating, and that such rating negligently misrepresented the risk associated with the notes issued by Colorado–Ute. Furthermore, it is also established for purposes of this motion that the plaintiff did reasonably rely on such representations to its detriment in purchasing the notes issued by Colorado–Ute. Therefore, even though most of the tortious acts did not occur in Kansas, there can be little doubt that the "injury resulting from the tortious act" occurred in Kansas since the plaintiff is a Kansas bank. *See Volt Delta Resources*, 241 Kan. at 777, 740 P.2d 1089. As a result, this case falls within the parameters of K.S.A. 60–308(b)(2), and the first step in establishing personal jurisdiction over Moody's is satisfied.

The next question the court must address is whether the exercise of jurisdiction in this case would violate the due process clause of the Fourteenth Amendment to the United States Constitution.

The Tenth Circuit has recognized that there are two parts to due process analysis: (1) minimum contacts/purposeful availment, and (2) whether the assertion of personal jurisdiction comports with "fair play and substantial justice." *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1419 n. 6 (10th Cir.1988) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985)); *see also Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); and *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

The constitutional touchstone for the exercise of personal jurisdiction remains whether the defendant purposefully established "minimum contacts" in the forum state. *Burger King*, 471 U.S. at 474, 105 S.Ct. at 2183. The key to establishing minimum contacts is whether the potential "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."

The Supreme Court has often said that the requisite minimum contacts must have a basis in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." *See Asahi*, 480 U.S. at 109, 107 S.Ct. at 1030 and *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183 (quoting *Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. at 1239). Furthermore, the Supreme Court has said the following about the requisite connections:

> Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a "substantial connection" with the

forum State. Thus, where the defendant "deliberately" has engaged in significant activities within a State or has created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Burger King*, 471 U.S. at 475–76, 105 S.Ct. at 2183–84 (emphasis original; citations and footnotes omitted).

█ Jurisdiction over corporations may be either general or specific. *Rambo*, 839 F.2d at 1418. If the suit arises out of, or is related to, the defendant's contacts with the forum state, then a court may analyze the case under the less stringent "specific jurisdiction" requirements. *Id.* In regard to general jurisdiction, it has been held that if a foreign corporation carries on "continuous and systematic" corporate activities in the forum state, it may be fair and reasonable to subject that corporation to proceedings in that state even if the cause of action in the forum state was unrelated to the defendant's forum activities. *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952).

█ In the case at bar it is established that Moody's regularly sold and distributed its services to paying subscribers located in the state of Kansas. It is also established that at the request of public or private entities, Moody's has issued ratings regarding Kansas entities which have been published in one or more of Moody's publications and distributed throughout the United States, including Kansas. In addition, Moody's has periodically mailed to Fidelity State Bank, without solicitation or payment, its Short Term Market Record Report which is published on a quarterly basis.

These contacts are sufficiently "continuous and systematic" to establish general jurisdiction over Moody's. That is, by entering into these continuing obligations with Kansas residents, Moody's has availed itself of the privilege of conducting business in Kansas and has been shielded by "the benefits and protection" of the laws of Kansas. Thus, from these contacts, Moody's should have reasonably anticipated being haled into court in Kansas.

Furthermore, the court may very well have specific personal jurisdiction. That is, since the size of the offering was relatively large, $25,000,000.00, and the company offering the notes was in a state adjacent to Kansas, it was reasonably foreseeable that Kansas investors would be approached about purchasing the notes.

In addition, Moody's has periodically mailed to Fidelity State Bank without solicitation or payment its Short Term Market Record Report which is published on a quarterly basis. This evidences an intent by Moody's to solicit the business of the Fidelity State Bank. Moreover, it would be reasonable to assume that it is precisely because of Moody's publications, some of which are sent to Kansas residents, that the Fidelity State Bank relied on Moody's P–1 rating in this case. That is, but for the fact that Moody's is a nationally reputable organization which sent publications to Kansas residents, it may not have been reasonable for the Fidelity State Bank to rely on its P–1 rating of Colorado–Ute. Since these facts indicate action by Moody's purposefully directed toward Kansas, the minimum contacts/purposeful availment test can be satisfied.

█ Furthermore, the assertion of personal jurisdiction over Moody's surely comports with "fair play and substantial justice." That is, it would surely be reasonable to assume that reliance on its good name is precisely what Moody's desires in sending its publications into this state. The fact that Moody's sent unsolicited publications to the plaintiff also supports this finding. Since plaintiff did precisely what Moody's intended plaintiff to do as a result of Moody's contacts with this state (that is, rely on its good name) in making the purchase of Colorado–Ute notes, it surely would be reasonable and fair to require Moody's to be subject to suit in Kansas.

The primary cases relied on by Moody's in arguing that this court does not have personal jurisdiction are *Asahi*, 480 U.S. 102, 107 S.Ct. 1026; *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); and *Dirks v. Carnival Cruise Lines*, 642 F.Supp. 971 (D.Kan.1986).[2] Moody's argues that these cases are factually similar to the case at bar. In addition, since the courts in those cases found the necessary minimum contacts were not present, Moody's asserts this court should be bound by the holdings of those cases. A close look at the established facts in those cases reveals, however, that the holdings are readily distinguishable from the present case. Moreover, those cases set forth some general principles which actually demonstrate why a contrary finding in regard to personal jurisdiction over Moody's is mandated in this case.

One reason *Asahi* and *Dirks* are readily distinguishable from the present case is that the defendant in those cases was a foreign (alien) corporation. The court in *Asahi*, specifically said that "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have *significant weight* in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." 480 U.S. at 114, 107 S.Ct. at 1033 (emphasis added).

More specifically, in *Dirks* the plaintiff sought damages for negligently prepared food which she received while a passenger on a ship owned and operated by the defendant. To establish long arm jurisdiction in that case, plaintiff relied exclusively on

K.S.A. 60–308(b)(1). *Dirks*, 642 F.Supp. at 973. In contrast, as the court has already set forth herein, long arm jurisdiction in this case is predicated on K.S.A. 60–308(b)(2). In addition, in *Dirks* the ticket allowing plaintiff to be a passenger aboard defendant's ship specifically stated that any dispute incident to the contract between the parties was to be litigated in the State of Florida. Since the parties agreed to have this matter litigated in another forum, Kansas' interest in having the case litigated in this state was minimal.[3] In contrast, there is no such agreement between the parties to litigate this matter in another forum and Kansas has strong interests in assuring compensation for its citizens from injuries occurring in Kansas which result from negligent acts outside of this state. *Head v. Platte County, Mo.*, 242 Kan. 442, 447, 749 P.2d 6 (1988).

The issue in *Asahi* was whether the mere awareness on the part of the foreign defendant, that the component parts it manufactured, sold, and delivered outside the United States would reach the forum state in the stream of commerce, supplied the necessary minimum contacts with that forum state. 480 U.S. at 105, 107 S.Ct. at 1028. The Supreme Court held in that case that the mere placement of a product into the stream of commerce by the defendant was not alone sufficient to demonstrate "an act of the defendant purposefully directed toward the forum State." *Id.* at 112, 107 S.Ct. at 1032. The Supreme Court then instructed that additional conduct by the defendant which indicates an intent or purpose to serve the market in the forum state may establish the necessary contacts (i.e.,

**2.** At page 4 of its reply brief, Moody's cites a statement in an unpublished opinion by this court that "unrelated contacts may not be sufficient to impose jurisdiction on defendants in Kansas," as support for the proposition that general business connections between a defendant and Kansas are not sufficient. *Moss Sales & Service, Inc. v. Maurer*, No. 89–1635–K, slip op. at 4, 1990 WL 72590 (D.Kan. May 25, 1990). However, that statement was in regard to jurisdiction under K.S.A. 60–308(b)(1). Moreover, in the very next paragraph of that opinion this court recognized that the claims against the defendant essentially sounded in tort, and that since the tort was committed in Kansas, Kansas

did have personal jurisdiction over the defendant pursuant to K.S.A. 60–308(b)(2). Thus, although *Moss Sales* does not in any way support a finding that general business contacts cannot be viewed as the requisite purposeful availment for minimum contacts purposes, it does support a finding of long arm jurisdiction over Moody's pursuant to K.S.A. 60–308(b)(2).

**3.** In addition, the Supreme Court has recently recognized that in some circumstances these forum selection clauses are enforceable. *See Carnival Cruise Lines v. Shute*, —— U.S. ——, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991).

"designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State"). *Id.*

In the present case, the additional conduct by the defendant indicating intent and purpose to serve the market in Kansas is present. That is, action by Moody's "purposefully directed toward the forum State" (Kansas) is shown by Moody's regular, intentional sale and distribution of its publications to customers in Kansas, the sending of an unsolicited publication on a quarterly basis to the plaintiff, and the rating of Kansas public or private entities when requested.

In *World–Wide Volkswagen* the issue was whether an Oklahoma court could exercise personal jurisdiction over nonresident defendants (an automobile retailer and its wholesale distributor) in a product liability action, when the defendants' only connection with Oklahoma was the sale of an automobile in New York to a New York resident who subsequently was involved in an accident in that automobile in Oklahoma. 444 U.S. at 287, 100 S.Ct. at 562. The Supreme Court found in that case that the mere "unilateral activity" of the buyer of the automobile traveling to Oklahoma did not sufficiently establish that the at-issue defendants (the automobile retailer and its wholesale distributor) purposefully availed themselves of the privilege of conducting activities within Oklahoma. *Id.* at 297–98, 100 S.Ct. at 567. It should also be noted that the plaintiff in that case argued that some contact with Oklahoma by the defendants was demonstrated by the fact that the sale of automobiles by the New York defendants was aided by the fact that those automobiles could travel across the United States and be serviced at an extensive chain of Volkswagen service centers throughout the country, some of which were in Oklahoma. However, it was an established fact in that case that the defendants did not earn any direct revenues from the service centers. *Id.* at 298 n. 12,

100 S.Ct. at 568 n. 12. Thus, the court concluded that any financial benefit accruing to defendants from such "collateral relation" with the forum state did not sufficiently demonstrate the necessary purposeful availment for the minimum contacts test. *Id.* at 299, 100 S.Ct. at 568.

It is extremely important to note that the at-issue defendants in *World–Wide Volkswagen* were not the manufacturer or a major distributor of Volkswagen. The defendants were a retailer who was incorporated in New York and did business solely in New York and a wholesale distributor who was incorporated in New York and did business only in New York and two adjacent states. *Id.* at 288–89, 100 S.Ct. at 562–63. In regard to a manufacturer or major distributor the Court said:

> Hence if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

*World–Wide Volkswagen,* 444 U.S. at 297–98, 100 S.Ct. at 567. Thus, it is apparent from this quoted language that if the defendant had been the manufacturer of Volkswagen, then the Supreme Court would have found that defendant was subject to suit in Oklahoma.

For the present case to be like *World–Wide Volkswagen* the issue would have to be whether this court could exercise personal jurisdiction over a New York broker doing business only in New York, who, in selling Colorado–Ute notes to a New York resident, represented that Moody's had given those notes a P–1 rating and then that

New York resident moved to Kansas and wanted to sue the New York broker here in Kansas. Clearly in that case, if the New York broker did not have any other contacts with Kansas, *World–Wide Volkswagen* would mandate a finding that this court did not have personal jurisdiction over the New York broker.

However, the defendant in the present case, Moody's, is much more like the manufacturer than the retail seller of the automobile. That is, Moody's is the one that created the negligent P–1 rating. Furthermore, Moody's regularly and intentionally sells and distributes its publications to customers in Kansas. Moreover, Moody's whole business is dependent on people relying on their good name. Some of the ways it induces Kansas residents to do that are the sending of unsolicited publications like that sent to the plaintiff on a quarterly basis, and the rating of Kansas public or private entities when requested. As the court has already said, these contacts demonstrate the requisite purposeful availment and minimum contacts with Kansas.

IT IS THEREFORE ORDERED this 7 day of June, 1991, that the motion to dismiss filed by defendant Moody's Investors Service is denied.