FINANCE & MARKETING ASSOCIA-
TION INTERNATIONAL, INC., a
Kansas Corporation, Plaintiff,

v.

THE HE–RO GROUP, INC., d/b/a Nite-
line and Black Tie by Oleg Cassini, a
New York Corporation, Defendant.

No. 97–1208–JTM.

United States District Court,
D. Kansas.

Sept. 2, 1997.

Michael G. Jones, Martin, Pringle, Oliver,
Wallace & Swartz, Wichita, KS, for Plaintiff.

Robert W. Kaplan, Kaplan, McMillan &
Harris, Wichita, KS, Andrew J. Lorin, Low-

enthal, Landau, Fisher & Bring, New York City, for Defendant.

## MEMORANDUM AND ORDER

MARTEN, District Judge.

The present action is a contract dispute between Finance & Marketing Association International, Inc. (FMA), and The He–Ro Group, Inc. FMA is a Kansas corporation. He–Ro is a New York City company which designs, manufactures, and distributes women's apparel. FMA contends He–Ro breached a January 31, 1996 exclusive representation agreement entered into by the parties. Under the agreement, FMA was to be the exclusive dealer to "purchase, promote, and sell the products made by [He–Ro] in the Country of Lebanon." (Kaplan Aff. at ¶ 9.)

Currently before the court is defendant He–Ro's motion seeking, alternatively, dismissal for lack of personal jurisdiction or venue in Kansas, or transfer to New York under 28 U.S.C. § 1404. With one minor exception (noted below) the facts relating to jurisdiction and venue which are premised on affidavits submitted by the parties are not in dispute.

He–Ro stresses that its principal place of business is New York City. It maintains no offices, branches, or agencies in Kansas. It is not licensed to do business in Kansas and has no employees, assets, or facilities to receive communications in Kansas. According to He–Ro, it derives no appreciable income from Kansas, making only 0.5% of its fiscal 1997 sales from Kansas buyers. All orders from Kansas buyers are written in or sent to New York or Dallas.

According to the affidavits attached to He–Ro's motion, none of its agents entered Kansas to discuss or negotiate the agreement. He–Ro contends no acts pursuant to the contract took place in Kansas and that no such acts were even contemplated to take place in Kansas. The contract does not require any acts to take place in Kansas. According to He–Ro, the agreement provided only that He–Ro would procure sales in Lebanon. When He–Ro delivered goods to FMA, it did so in New York.

The agreement provides that its validity will be governed by the laws of the State of New York. (Agreement at ¶ 5(d).) While He–Ro never went to Kansas, FMA came to New York many times in connection with the agreement, and all face-to-face meetings occurred in New York. The breach of the agreement allegedly occurred in New York.

In response, FMA stresses its connection to Kansas, stating that its primary place of business for the last six years has been Wichita, Kansas. FMA contends He–Ro, through its prior contacts with FMA, knew FMA's business was run from Kansas. In performing the contract, He–Ro agents telephoned FMA in Kansas. All merchandise orders placed pursuant to the agreement were faxed from Wichita to He–Ro in New York. Mail from FMA to He–Ro is sent from Wichita. FMA wired payments to He–Ro in New York from Wichita banks. FMA contends He–Ro received "significant income from Kansas, including several hundreds of thousands of dollars" under the terms of the agreement in issue.

Jean-Pierre Mikhail, the president of FMA, drafted the agreement in Kansas. Under the terms of the agreement, He–Ro expected FMA to contact local retailers in Lebanon. Mikhail states in his affidavit that "[c]ertain shipments of clothing from He–Ro were shipped to FMA in Kansas and received by FMA in Kansas." (Mikhail Aff. at ¶ 6.) He–Ro disputes this point, contending no shipments were ever made to Kansas. The affidavit of Mikhail states that "invoices showing these shipments to Kansas will be produced when I return from Lebanon in mid-August." *Id.* Although it is now late August, such invoices have not been submitted. Given the posture of the case, the court has to take the plaintiff's allegations as true and assume some shipments were made directly to Kansas.

Mikhail further states in his affidavit that "I plan to spend at least 80 percent of my time in Kansas during the time this matter is expected to be litigated. Wichita is my primary base of operations, and it is where I live and work." (Mikhail Aff. at 7). Where Mikhail lives during the litigation is, of course, entirely irrelevant. Indeed, the affi-

davit clearly suggests that prior to this litigation Mikhail spent substantially less time in Kansas than he now intends.

FMA identifies two potentially relevant portions of the Kansas long arm statute as a basis for invoking jurisdiction over He–Ro in Kansas. It alleges that He–Ro both transacted business in Kansas within the meaning of K.S.A. 60–308(b)(1) and entered into a contract to be performed in whole or part in Kansas under K.S.A. 60–301(b)(5).

■ The Kansas long arm statute is construed liberally to allow jurisdiction to the full extent permitted by due process. *Federated Rural Elec.v. Kootenai Elec.,* 17 F.3d 1302, 1305 (10th Cir.1994). To support an exercise for personal jurisdiction under the transaction business element of the statute, the plaintiff must show that the nonresident defendant purposely consummated a transaction in Kansas, the claim for relief arose from that conduct, and the exercise of personal jurisdiction does not affect traditional notions of fair play and substantial justice. *Rambo v. American Southern Ins. Co.,* 839 F.2d 1415, 1419 (10th Cir.1988); *Green Country Crude v. Avant Petroleum,* 648 F.Supp. 1443 (D.Kan.1986).

■ A defendant can establish sufficient minimum contacts with the forum state in one of two ways. Specific jurisdiction exists when the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws, and the claims against it arise out of those contacts. *Kuenzle v. HTM Sport–Und Freizeitgerate AG,* 102 F.3d 453, 456 (10th Cir.1996). General jurisdiction lies when the defendant's contacts with the forum state are so continuous and systematic that the state may exercise personal jurisdiction even when the claims are unrelated to the defendant's contacts with the forum state. *Trierweiler v. Croxton and Trench Holding Corp.,* 90 F.3d 1523, 1532–33 (10th Cir.1996).

Business is transacted when "an individual is within or enters this state in person or by agent and, through dealing with another within the state, effectuates or attempts to effectuate a purpose to improve his economic conditions and satisfy his desires." *Woodring v. Hall,* 200 Kan. 597, 607, 438 P.2d 135 (1968); *Marcus Food Co. v. Crown Meat Co.,* 779 F.Supp. 514, 521 (D.Kan.1991).

■ Here, the court finds the allegations presented by FMA do not establish that defendant He–Ro transacted business in Kansas, and that it did not enter into a contract which was to be performed in Kansas. There are some allegations that, pursuant to the contract, Mikhail of FMA did draft the agreement and executed it on behalf of FMA in Kansas. But the "mere negotiation of a sales transaction, or placement of an order for goods, over the telephone with persons residing in Kansas does not invoke the benefits and protections of the laws of this state." *Green Country Crude,* 648 F.Supp. at 1451. Moreover, as a general rule letters and telephone calls are insufficient to establish personal jurisdiction. *Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1077 (10th Cir.1995).

Whatever actions FMA undertook in Kansas, they appear to have been entirely fortuitous. Although it forwarded invoices and payments to He–Ro in New York, it could have done this as well from any other location. No He–Ro agents ever appeared personally in Kansas. He–Ro never solicited for business or advertised in Kansas. Even assuming Mikhail's affidavit is correct that "certain shipments" of clothing were sent to Kansas, this appears clearly to be the exception to the great majority of shipments, which were normally sent from New York to Lebanon.

Contrary to FMA's argument, nothing in the agreement requires any acts to take place in Kansas. The "Whereas" clauses in the agreement identify FMA as being "engaged in the business of Wholesale and Distribution of Ladies Apparel *in the Country of Lebanon,*" and state that FMA "desires to be appointed 'The Exclusive Agent for the Company' *in the above specified territory.*" (Agreement, p. 1) (emphasis added). The agreement then states that FMA was appointed as exclusive agent of He–Ro "in the Country of Lebanon." Under the paragraph entitled "Duties," the agreement states that FMA will "purchase, promote and sell [He–Ro's product] in the Country of Lebanon."

FMA attempts to distinguish *Green Country Crude* on the grounds that in that case the court rejected an attempted by a seller to invoke jurisdiction over a nonresident buyer, and contends courts have set a higher standard in such cases. But FMA is incorrect in attempting to argue that this distinction is relevant here by claiming it is a buyer, since it is not. As to the contract between FMA and He–Ro, FMA is essentially in the role of seller of its services as exclusive distributor. Thus, *Green Country Crude* caution toward allowing a party to contact a nonresident buyer and then attempting to manufacture jurisdiction by unilateral actions in Kansas is on point.

On the whole it would appear the contract contemplated that the work FMA was expected to undertake was in Lebanon. He–Ro's obligations were limited to delivery of goods in New York. Given the circumstances of the case, there is a basis for dismissing the action for lack of jurisdiction.

The court finds dismissal is also mandated under 28 U.S.C. § 1391(a), which provides that in diversity actions a claim may be brought in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred [or] (3) a judicial district in which any defendant is subject to personal jurisdiction ... if there is no district in which the action may otherwise be brought.

It has been recognized that "venue for a claim based on breach of contract be the place of intended performance." *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 842 (9th Cir.1986). Here, as discussed above, the court finds the contract only contemplated performance in New York. Here, FMA claims He–Ro breached the agreement by continuing to market goods sold in Lebanon. It is not controverted that He–Ro never appeared in or solicited goods in Kansas. Thus, this alleged breached occurred either in New York or Lebanon, but it did not occur in Kansas.